# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

       Plaintiff,

v.

THOMAS FITTON,

       Defendant.

Case No. 1:19-cv-02793-TSC

## DEFENDANT'S MOTION TO DISMISS

Defendant Thomas J. Fitton ("Fitton"), James F. Peterson ("Peterson"), Paul J. Orfanedes ("Orfanedes") and Christopher J. Farrell ("Farrell"), by counsel and pursuant to Rule 12(b)(6) and LCvR 7, hereby move this Court to dismiss the Complaint filed by Plaintiff Larry Klayman ("Klayman") for failure to state a claim on which relief can be granted.

## INTRODUCTION

This action was originally filed and dismissed by the U.S. District Court for the Southern District of Florida for lack of jurisdiction.[1] *See Klayman v. Fitton*, Civil Action No. 1:19-cv-20544 (S.D. Fla.) ("Florida Action") at ECF Nos. 50 and 59. Klayman sues Defendants for an allegedly defamatory statement published by a third-party, Roger Stone ("Stone"), on the internet on January 18, 2019. The Complaint contains three claims, defamation, defamation *per se* and defamation by implication. Factual allegations in the Complaint are sparse. Each cause of action is based on an

---

[1] During the Florida Action, Klayman was permitted to depose Fitton for two hours regarding jurisdictional facts, including contact between Stone and Fitton or any other JW employee. The deposition yielded no information to support such contact or Klayman's allegations.

alleged statement uttered by a third-party, Stone. Complaint ("Compl.") ¶¶ 19-20.  The remaining allegations are conclusions and speculation that are not based on allegations of fact.

The Complaint does not allege any facts to: (1) link the alleged statement by Stone and any Defendant; (2) identify any alleged defamatory words spoken by any Defendant; (3) show contact between Stone and any Defendant; (4) establish when any alleged defamatory words were spoken by any Defendant; (5) show how Defendants acted "in concert;" or (6) demonstrate how Klayman suffered special damages. Instead, Klayman alleges that Defendants "had to" have spoken to Stone. Compl. ¶¶ 9, 12. He also alleges "on information and belief" that Peterson and/or Fitton made unidentified defamatory statements to Stone at the direction of the "other Defendants," but if that did not occur then the "other Defendants" made the defamatory statements themselves. Compl. ¶ 12. Twelve paragraphs allege that Defendants are acting "in concert" with each other and/or Stone to defame Klayman but no paragraph contains any allegation of fact to show how this allegedly occurred. Compl. ¶¶ 8, 9, 18, 23-25, 27, 28, 32, 39, 44 and 46.

The lack of specifics demonstrates that the Complaint fails to allege a plausible claim, amounting to nothing more than a wish for liability. "While a complaint … does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Accordingly, this matter should be dismissed for failure to state a claim on which relief can be granted.

## BACKGROUND

This litigation is best understood through the prism of history between the parties. On September 19, 2003, Klayman separated from Judicial Watch, Inc. ("JW") and executed a Confidential Separation Agreement. Upset at being forced out of JW, Klayman began a campaign in 2006 against JW and its Directors that involved newspaper ads, direct mailings, emails and a website with the end goal of returning to JW to "save" it. As part of this effort, he sued JW and its Directors alleging multiple breaches of the agreement and other claims. In response, JW filed counterclaims for breaches of contract, unfair competition and trademark infringement. The case finally went to trial in February/March 2018 before the Honorable Colleen Kollar-Kotelly. The jury rejected all of Klayman's claims and awarded JW damages in the amount of $2,400,000 on its counterclaims, of which $1,000,000 was for unfair competition based, in part, on the misrepresentation that Klayman left JW to run for the U.S. Senate. *See Klayman v. Judicial Watch, Inc.*, Case No. 06-cv-00670-CKK (D. D.C.) at ECF No. 580. During trial, JW demonstrated that Klayman was forced to resign or face an internal investigation into an admitted inappropriate relationship with a JW employee, an admitted physical assault against his former spouse (in the presence of his young children) and suspicion that he used JW assets to pursue the inappropriate relationship.

The words allegedly spoken by Roger Stone are best understood in context. On or about January 18, 2019, Stone was interviewed on a program named InfoWars and made the following introductory statements regarding Klayman:

> Well, your judgement on Larry Klayman is entirely incorrect. He's never actually won a courtroom victory in his life. He was ousted at Judicial Watch. Ask Tom Fitton why he left. He left because of a sexual harassment complaint. He's an incompetent. He's a numbskull. He's an idiot. He's an egomaniac. And he could be the single worst lawyer in America. With him as Jerry Corsi's lawyer,

> Corsi may get the electric chair.  So, your idea that he's a good guy
> is entirely wrong.  By the way Larry sue me.  Love to go toe to toe
> with you.  Love to.  Love to bring those witnesses to talk about your
> personal conduct, you piece of garbage.

Compl. ¶ 19 at n1 and n2. Stone's alleged words are not attributed to Fitton. Instead, Stone merely

encourages listeners to confirm a portion of his statement by asking Fitton. Stone never states that

the source of his information is Fitton or any other Defendant. Taken as a whole, the Stone

statement appears to invite a response from Klayman directly to Stone.

On January 24, 2019, one week after making the alleged statements, Stone was indicted.

Compl. ¶¶ 13, 16, and Compl. Exhibit 2 at p. 24; *see also USA v. Stone*, Case No. 1:19-cr-00018-

ABJ (D. D.C.).[2] Stone was subsequently arrested on January 25, 2019. *Id.* Two months later, on

March 21, 2019, Peterson filed a FOIA complaint on behalf of JW seeking information regarding

the arrest, which was effectuated during a televised raid on Stone's home. *See Judicial Watch, Inc.*

*v. U.S. Dep't of Justice*, Case No. 19-0795 (D. D.C.) at ECF No. 1.[3]

## ALLEGATIONS IN THE COMPLAINT[4]

Klayman asserts claims for defamation, defamation *per se* and defamation by implication

against Fitton, Peterson, Orfanedes and Farrell based on the following allegations:

- Klayman is an individual and citizen of Florida.[5] Compl. ¶ 3.

- Defendant Fitton is an individual and citizen of the District of Columbia.
  Fitton is also the President of JW. Compl. ¶ 4.

---

[2]     The Court can take judicial notice of the docket, which shows both the date of indictment
and the date of arrest. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

[3]     The Court can take judicial notice of the docket, which shows both the date of filing and
Defendant Peterson's role as counsel for JW. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir.
2004).

[4]     The list of allegations is not conceded to be allegations of fact but an attempt to identify
allegations relevant to Plaintiff's claims.

[5]     This allegation is false. Klayman does not live, own real estate, lease a residence, or sleep
in Florida. He lives in California.

- Defendant Peterson is an individual and resident of the District of Columbia. Peterson is a member of the JW legal department. Compl. ¶ 5.

- Defendant Orfanedes is an individual and resident of the District of Columbia. Orfanedes is a member of the JW legal department. Compl. ¶ 6.

- Defendant Farrell is an individual and resident of the District of Columbia. Farrell is the Director of Investigation and Research for JW. Compl. ¶ 7.

- Peterson worked on and prepared a complaint regarding the FBI raid on Stone's residence. It was at this time that Peterson "***had to be in contact*** with Stone and published or republished the false and defamatory statement." Compl. ¶ 9.

- Fitton, Orfanedes and Farrell published and republished the defamatory statement "acting in concert in their individual capacities as joint tortfeasors." Compl. ¶ 9.

- Orfanedes testified in court as to the substance of the defamatory statement. Compl. ¶ 9.

- Defendants are working with Stone to defame Klayman. Compl. ¶ 10.

- "***On information and belief***, the defamatory statement alleged herein were [sic] made by Defendant Peterson and/or Defendant Fitton, at the direction of or directly by the other Defendants, to Stone with the understanding and expectation that Stone would then republish it to the masses." Compl. ¶ 12.

- Stone has engaged in a campaign to illegally smear, intimidate, coerce and threaten Dr. Jerome Corsi, who is represented by Klayman. Compl. ¶ 11.

- Stone's statements regarding Klayman relate to a fear that he would be indicted. Compl. ¶ 12.

- Fitton and Peterson "***had to be in communication with Stone***, as they worked on, furthered and filed a complaint in this court over the raid on Stone's Florida residence" by the FBI "***at the time of Stone's indictment.***" Compl. ¶ 12.

- Corsi is a material witness for the prosecution of Stone and Klayman's client. Compl. ¶¶ 14, 17.

- Defendants and Stone are joint tortfeasors hoping to intimidate Corsi and Klayman by harming their reputations, coerce Corsi to testify falsely, and impede Corsi's criminal defense. Compl. ¶ 18. Stone and Fitton are also acting in concert to divert funds from Corsi's legal defense fund. *Id.*

- On January 18, 2019, Stone published a video on two internet sites in which he makes the following statement regarding Klayman: "He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He left because of a sexual harassment complaint." Compl. ¶¶ 19-20. Links for the videos are alleged in footnotes 1 and 2.

- Stone made the defamatory statement "*at the direction and as a result of the concerted actions of the Defendants*," to whom the defamatory statement is attributed. Compl. ¶ 21.

- Defendants know that Klayman was not ousted from Judicial Watch due to a sexual harassment complaint. Compl. ¶ 22.

- Defendants published the defamatory statement to Stone, who then republished it by internet videos. Compl. ¶ 24.

- Defendants' intent is to boost their own reputations and standing at the expense of Klayman. Compl. ¶ 24.

Stone's alleged statement regarding Klayman is not attributed to any Defendant. Stone merely encouraged listeners to obtain confirmation for part of his statement from Fitton, the President of JW. No alleged fact shows that Fitton or any other Defendant made any statement to Stone, defamatory or otherwise, at any time. The remaining allegations are conclusions and imagined facts that have no relationship to defamation claims and need not be repeated herein. *See, e.g.*, Compl. ¶¶ 10, 13-17.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court must "'accept all the well-pleaded factual allegations of the complaint as true.'" *Hurd v. D.C., Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015)). But "'[t]hreadbare recitals . . . , supported by mere conclusory statements, do not suffice.'" *Arpaio*, 797 F.3d at 19 (quoting *Iqbal*, 556 U.S. at 678). The court cannot assume the truth

of "legal conclusions" or "formulaic recitation[s]," *Iqbal*, 556 U.S. at 678, nor can it "'accept inferences that are unsupported by the facts set out in the complaint,'" *Arpaio*, 797 F.3d at 22 n.2 (quoting *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)).

In addition, Plaintiff must allege facts that are more than "'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2009)). The claim must be "facial[ly] plausib[le]," and the facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable." *Id.* "[D]etermining whether a complaint states a plausible claim… [is] context-specific, … requir[ing] the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## ARGUMENT

### A.   THE COMPLAINT FAILS TO ALLEGE A DEFAMATORY STATEMENT BY THE DEFENDANTS

Fundamental to any claim for defamation is "that the defendant made a false and defamatory statement concerning the plaintiff." *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C.2007). "Publication requires making a statement to at least one other person." *Westfahl v. District of Columbia*, 75 F.Supp.3d 365, 375 (D.D.C. 2014) (citing *Charlton v. Mond*, 987 A.2d 436, 438 n.4 (D.C. 2010)). Here, Klayman does not allege a defamatory statement by any Defendant or its communication to another. Therefore, the Complaint fails to satisfy the first, and most essential, element of a defamation claim.

The Complaint alleges only one defamatory statement uttered by a third-party, Stone:

> He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He left because of a sexual harassment complaint.

Compl. ¶ 20. The alleged defamatory statement is not attributed to Fitton. Instead, Stone merely states "ask Tom Fitton". No facts are alleged to show a statement uttered by any Defendant. The

Complaint relies only on the alleged statement by Stone. Except for rhetorically asking listeners to consult Fitton for confirmation, there is no nexus to the Defendants. Stone did not say, "Tom Fitton told me . . . ." or "According to Tom Fitton . . . ."  He said, "Ask Tom Fitton."  While Klayman alleges Stone "attributed" the statement to "Defendants," the quote contains no attribution. The Court's evaluation of the words "must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect," to "resolve disputes quickly without chilling speech through the threat of burdensome litigation." *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 469 (2007) (Roberts, C.J.).

Considering Klayman's alleged conclusions in the context of the entire Complaint only serves to disprove the plausibility of his claims. He does not allege any facts to show where, how or through what means a statement was communicated to Stone. Instead, Klayman alleges that Peterson "***had to be***" in contact with Stone and that he published "the defamatory statement." Compl. ¶ 9. "On information and belief," Klayman contradicts himself and alleges that Peterson and/or Fitton uttered the defamatory statement to Stone at the direction of the other Defendants. Compl. ¶ 12. Also, Fitton and Peterson "***had to be in communication with Stone***," because they prepared a FOIA complaint concerning the FBI raid of Stone's residence at the time of the indictment. Compl. ¶ 12.

Klayman's reliance on the timing of the indictment, raid and FOIA complaint further contradict his claims. Each occurred after Stone made the alleged statements on January 18, 2019, during the InfoWars interview. The indictment and raid occurred on January 24 and 25, 2019, a week after the interview. The FOIA complaint was filed on March 21, 2019, more than two months later. The timing does not sync with the allegations. Neither Stone nor the Defendants could know when the indictment or FBI raid would occur. When Peterson prepared and filed the FOIA

complaint, the statement by Stone was more than two months old, which begs the question, how could Peterson or Fitton know that these events would occur?

An objective review of the allegation that Defendants are working "in concert" with Stone, or at the direction of Fitton and Peterson, demonstrates the allegations are mere speculation. Alleged events manufactured by Klayman, but having no factual support, do not objectively support a plausible defamation claim. There is no allegation of contact among Fitton or Peterson and Stone. Instead, Klayman assumes these events, which do not support plausible, or even conceivable claims. Plaintiff must do more than imagine a claim to open the courthouse doors and trigger costly discovery. "[I]n ruling on a motion to dismiss, the Court is only bound by plaintiff's factual assertions, not their conclusions or characterizations of the facts." *Smith v. Clinton*, 253 F. Supp. 3d 222, 240 (D.D.C. 2017) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)), *aff'd*, 886 F.3d 122 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 459, 202 L. Ed. 2d 362 (2018). Here, Klayman pleads no facts to show that Defendants uttered a statement concerning him or even communicated with Stone.

Peterson, Orfanedes and Farrell are not alleged to have made any defamatory statement. Plaintiff merely imagines their culpability. *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580 596 (D.C. 2000) (noting that costly defamation litigation cannot be based on "imagined slights"). Stone's alleged statement does not mention these Defendants. Plaintiff does not allege any facts showing a nexus between Defendants and Stone's statement. Reliance on speculation or an assumption that Defendants "***had to be in contact***" with Stone, acted "in concert" or "published or republished the false and defamatory statement" simply fails to establish a plausible claim. For example, without identifying when, what was stated, or how it impacts on this litigation, Klayman alleges that Orfanedes testified in court regarding "the substance of the defamatory statement."

Compl. ¶ 9. Nothing further is alleged. To the extent that Klayman relies on testimony to establish liability, Orfanedes is entitled to an absolute litigation privilege. *See*, *e.g.*, *Hinton v. Shaw Pittman Potts & Trowbridge*, 257 F. Supp.2d 96, 99 (D. D.C. 2003) (finding absolute privilege for testimony on which defamation claim cannot be "grounded").  To the extent the allegation is intended to support the claim in some other manner, it fails for vagueness and lack of factual specifics. Except for this reference, Orfanedes is not specifically mentioned in the Complaint in connection with any defamatory statement.

Farrell's status as a Defendant is more tenuous. There are no factual allegations relating to Farrell. Except for a conclusion in Paragraph 9 that Farrell worked in concert with other defendants, no conduct or statement is attributed to him. The Complaint is silent regarding Farrell's role as a Defendant.

## B.   THE COMPLAINT FAILS TO ALLEGE AN IMPLIED DEFAMATORY MEANING ARISING FROM STATEMENT BY THE DEFENDANTS

A claim for defamation by implication is not based on what is literally stated, but what is implied. *See Tavoulareas v. Piro*, 817 F.2d 762, 780 (D.C.Cir.1987) (*en banc*); *cert. denied*, 484 U.S. 870 (1987) (use of the term "set up" in a familial context implied that family member's opportunity was product of nepotism, not merit). "Defamation by implication 'stems not from what is literally stated, but from what is implied.'" *Mar–Jac Poultry, Inc. v. Katz*, 773 F.Supp.2d 103, 115 (D. D.C. 2011) (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)). Courts are cautioned that implied defamation cases are "fraught with subtle complexities." *White*, 909 F.2d at 518. "[C]ourts must be vigilant not to allow an implied defamatory meaning to be manufactured from words not reasonably capable of sustaining such meaning." *Id*. at 519. "[I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established." *Id*. at 520

Here, Plaintiff alleges that the statement he was dismissed from JW due to a sexual harassment complaint created the impression that he was ousted for this reason, committed criminal sexual offenses and other acts of moral turpitude. Compl. ¶ 41. But there are no facts alleging that such a statement was ever uttered by any Defendant. Absent specific facts showing that a Defendant made this statement, the Court cannot initiate an objective evaluation of the words to determine whether, in context, they imply a defamatory meaning. Therefore, this claim fails for the same reason as the defamation claim – Plaintiff did not meet his burden of demonstrating that the claim is plausible.

Assuming *arguendo* that Plaintiff can link the Defendants to the Stone statements, there is no implied meaning as alleged. Being ousted from employment because of a sexual harassment complaint means just that, the individual was fired or forced to resign because of a complaint. No criminal activity or moral turpitude is implied. Such an assertion goes too far.

## C.      THE COMPLAINT FAILS TO ALLEGE SPECIAL DAMAGES

Pursuant to Fed. R. Civ. P. 9(g), special damages for defamation and defamation by implication must be alleged specifically. Plaintiff cannot rely on boilerplate recitation of conclusory statements that lack factual details. *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir.), *cert. denied*, 139 S. Ct. 459, 202 L. Ed. 2d 362 (2018).[6] "Special damages necessary to support an action for defamation, where the words are not actionable in themselves must be the loss of money, or of some other material temporal advantage capable of being assessed in monetary value." *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 114 (D. D.C. 2011).

Here, Plaintiff merely alleges that he "has been severely damaged" and that he is now subjected to "hatred, distrust, contempt, and disgrace." Compl. ¶¶ 29, 30, 42 and 43. The

---

[6]      Smith is a case in which Klayman was counsel to the plaintiff and presumably drafted the complaint. He should be aware of the applicable pleading standard.

Complaint does not contain any specific factual allegations to support these conclusions. Both claims fail to meet the heightened pleading requirement in Rule 9(g).

## D.    THE DEFAMATION *PER SE* CLAIM FAILS

To be defamatory for purposes of an ordinary defamation claim, a statement must "tend[] to injure plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community." *White v. Fraternal Order of* Police, 909 F.2d 512, 518 (D.C. Cir. 1990).  Such statements "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous."  *Klayman v. Segal*, 783 A.3d 607, 613 (D.C. 2001). A subset of defamation is defamation *per se*, which requires that a defendant falsely accuse the plaintiff of committing a crime or other unlawful act. *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 16 (D. D.C. 2019); see also *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 600 (D.C. 2000) (false accusation that employer violated state safety statute deemed defamation *per se*).

Here, Stone's statements do not declare or imply that Klayman violated any law.[7] The Stone statement merely asserts that Plaintiff was forced out of JW for a sexual harassment complaint. Such conduct does not rise to the level of a crime or moral turpitude as a matter of law. *See, e.g., Gryga v. Henkels & McCoy Grp., Inc.*, No. 19 C 1276, 2019 WL 3573565, at *5 (N.D. Ill. Aug. 6, 2019) (statements that plaintiff engaged in sexual harassment did not establish defamation *per se*); *Castro v. Total Home Health, Inc.*, No. 03 C 8486, 2004 WL 1588261, at *4 (N.D. Ill. July 9, 2004) (employer's statements that employee sexually harassed other employees did not qualify as defamation *per se*). A claim for defamation *per se* requires far more than just stating an individual was dismissed due to a sexual harassment complaint. *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 29 (D. D.C. 2019) (false accusation of being a sexual

---

[7]    Defendants do not concede that there are any allegations of fact to associate them with Stone's statements.

predator, having criminal record, being a monster, preying on women, being a racist, being a misogynist, or any combination thereof, deemed statements stating a claim for defamation and libel *per se*). Given the limited nature of the alleged Stone statement and the absence of any allegation regarding a statement by any Defendant, the claim fails.

## CONCLUSION

The allegations in the Complaint are far too vague, generic and weak to allege claims for defamation, defamation *per se* or defamation by implication.

WHEREFORE, Defendants respectfully requests that this Court GRANT the Motion and dismiss the action with prejudice.

Dated: November 13, 2019

Respectfully submitted,

/s/

_____

Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
300 N. Washington St., Suite 610
Alexandria, Virginia 22314
703.822.5001 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of November 2019, a copy of the foregoing Motion was served by the Court's ECF system upon all counsel of record listed on the Notice of Electronic Filing.

/s/

_____

Richard W. Driscoll