

# Transcript of Thomas J. Fitton

**Date:** June 6, 2019
**Case:** Klayman -v- Fitton

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Transcript of Thomas J. Fitton
Conducted on June 6, 2019

1 (1 to 4)

## Page 1

```
 1       IN THE UNITED STATES DISTRICT COURT
 2       FOR THE SOUTHERN DISTRICT OF FLORIDA
 3
 4  LARRY KLAYMAN,          *
 5       Plaintiff,         *
 6   vs.                    * Civil Action
 7  THOMAS FITTON,          * No. 1:19-cv-20544
 8       Defendant.         *
 9
10
11
12      Videotaped Deposition of THOMAS J. FITTON
13                    Washington, D.C.
14                 Thursday, June 6, 2019
15                      3:06 p.m.
16
17
18
19  Job No.: 247643
20  Pages 1 - 92
21  Reported by:  Vicki L. Forman
```

## Page 2

```
 1      Videotaped Deposition of THOMAS J. FITTON,
 2  held at the offices of:
 3
 4     Planet Depos
 5     Suite 950
 6     1100 Connecticut Avenue, Northwest
 7     Washington, D.C.  20036
 8     (888) 433-3767
 9
10
11
12      Pursuant to agreement, before Vicki L.
13  Forman, Court Reporter and Notary Public in and
14  for the District of Columbia.
```

## Page 3

```
 1             A P P E A R A N C E S
 2
 3  ON BEHALF OF THE PLAINTIFF PRO SE:
 4     LARRY KLAYMAN, ESQUIRE
 5     Klayman Law Group, P.A.
 6     Suite 345
 7     2020 Pennsylvania Avenue, Northwest
 8     Washington, D.C.  20006
 9     (310) 595-8088
10
11
12
13  ON BEHALF OF THE DEFENDANT:
14     RICHARD W. DRISCOLL, ESQUIRE
15     Driscoll & Seltzer
16     Suite 610
17     300 North Washington Street
18     Alexandria, Virginia  22314
19     (703) 822-5001
```

## Page 4

```
 1  ON BEHALF OF THE DEFENDANT:
 2     KATIE M. MERWIN, ESQUIRE
 3     Cole, Scott & Kissane, P.A.
 4     Suite 120
 5     222 Lakeview Avenue
 6     West Palm Beach, Florida  33401
 7     (561) 383-9206
 8     (Present via Telephone.)
 9
10
11
12  ALSO PRESENT:  Joannis Arsenis, Videographer
```

**Page 41**

1    MR. KLAYMAN:  Certify it.
2    Q  So as President of Judicial Watch you
3  would have known for sure that this Complaint had
4  been filed, correct?
5    MR. DRISCOLL:  Objection to form.
6    A  Well, the press release indicates it was
7  filed and I recall we sued about the raid, yes.
8    Q  And you gave interviews about suing in the
9  raid, correct, in the media?
10   A  I don't remember.
11   Q  Turn to the last page, page five.
12      The Complaint is signed by James F
13 Peterson, correct?
14   A  His name is on the last page of the
15 Complaint as a signatory.
16   Q  He is an attorney at Judicial Watch,
17 correct?
18   A  Yes.
19   Q  Now, Mr. Peterson had contact with Roger
20 Stone over the issue of the raid on his house, did
21 he not?
22   A  Not that I'm aware of.
23     MR. DRISCOLL:  Objection to form.
24   Q  You're saying you don't know one way or
25 the other?

**Page 42**

1    A  I don't believe he has.  I said I would
2  know if he had.
3    Q  How would you know if you couldn't even
4  identify the Complaint?
5    A  Another abusive harassing question.
6       MR. DRISCOLL:  It's a foundation question.
7  You can go ahead and answer it.
8       How would you know if he had contacted
9  Roger Stone?
10      MR. KLAYMAN:  Or if Roger Stone contacted
11 him.
12   A  Is it privileged?
13      MR. DRISCOLL:  That's an interesting
14 question.  The fact of the communication would not
15 be.  The contents of it would be.
16   A  How I would know is my question of whether
17 it's privileged or not.
18      MR. DRISCOLL:  No, I'm going to allow you
19 to answer that one.
20   A  How I would know about what my attorneys
21 are doing or Judicial Watch's attorneys are doing?
22      MR. DRISCOLL:  Yeah, and you're not
23 disclosing a communication.  You're just
24 describing a process.
25   A  Typically that type of communication would

**Page 43**

1  have been disclosed to me.
2    Q  But you don't know for sure that
3  Mr. Peterson didn't have contact with Roger Stone?
4       MR. DRISCOLL:  Objection to form.
5    A  I'm confident there was no such contact.
6    Q  You have told Mr. Peterson in the past,
7  have you not, that I was ousted from Judicial
8  Watch because of a sexual harassment complaint?
9       MR. DRISCOLL:  Objection to form.
10 Mr. Peterson is an in-house counsel and I'm going
11 to direct the witness not to answer.  That's an
12 attorney-client privilege.
13      MR. KLAYMAN:  Certify it.
14   Q  So you don't know whether or not
15 Mr. Peterson repeating what you had told him then
16 republished that to Roger Stone?
17      MR. DRISCOLL:  The communications between
18 an in-house counsel and the President of the
19 corporation relating to legal advice and
20 assistance are privileged.  He can't answer the
21 question about the contents of the communication
22 or derivative questions that would disclose the
23 content of the communication.
24      MR. KLAYMAN:  That's the crux of the
25 lawsuit.  That does not apply in this context.

**Page 44**

1       MR. DRISCOLL:  That doesn't waive the
2  privilege.
3    Q  Are you saying that you never told anyone
4  at Judicial Watch that I was ousted because of a
5  sexual harassment complaint?
6       MR. DRISCOLL:  Anyone other than the
7  attorneys?
8       MR. KLAYMAN:  Anyone.
9       MR. DRISCOLL:  No, I can't allow him to
10 answer that question.
11   Q  Are you saying that you never told anyone
12 that I was -- regardless -- let's take attorneys
13 out of it.
14      Have you ever -- you have told other
15 people in addition to -- strike that.
16      You have told other people excluding
17 attorneys that I was ousted from Judicial Watch
18 because of a sexual harassment complaint?
19   A  You have to ask the question again.
20      MR. KLAYMAN:  Read it back, please.
21   A  Please.
22      MR. KLAYMAN:  Let me rephrase it.
23   Q  I'm taking attorneys out of this question.
24 I'm saying you have told others who aren't
25 attorneys over the course of the last 16 years

---

Page 45

1  since I left Judicial Watch that I was ousted
2  because of a sexual harassment complaint?
3     A  No, because that's not true.  You weren't
4  ousted as a result of a sexual harassment
5  complaint.
6     Q  After I sued you in this particular case
7  has anyone -- have you or anyone at Judicial Watch
8  or your counsel tried to contact Roger Stone?
9        MR. DRISCOLL:  Objection to form.  The
10  question invades the attorney-client privilege and
11  the attorney work product.  I direct the witness
12  not to answer.
13       MR. KLAYMAN:  Certify it.
14       Madam court reporter, have a page in the
15  front where you have all the certified questions
16  and where you can find them to make it easy for
17  the Magistrate Judge.  Thank you.
18    Q  Now, I turn your attention back to your
19  affidavit which is --
20    A  Exhibit 3.
21    Q  Exhibit 3.  Turn your attention to
22  paragraph seven where it says "I have no
23  recollection of ever having any communication with
24  Roger Stone," do you see that?
25    A  Uh-huh.

Page 46

1     Q  Now, it doesn't say you didn't have a
2  communication with Roger Stone.  It just says that
3  you have no recollection of having one, correct?
4     A  That's correct.
5     Q  Do you remember during the Clinton years
6  that witnesses would always come in and say we
7  have no specific recollection and we would contest
8  that?
9        MR. DRISCOLL:  Just ask your question,
10  Larry.
11    Q  So you can't say categorically that you
12  haven't had communications with Roger Stone?
13  You're just saying you don't have a recollection
14  of ever having it, correct?
15    A  I think the statement speaks for itself.
16    Q  You could have said I have never
17  communicated with Roger Stone, correct, if that's
18  what you were trying to say, that you never had
19  any contact?
20    A  The statement speaks for itself.
21    Q  Then you state in the next sentence "I
22  have never published, uttered or implied to Roger
23  Stone that Klayman was the subject of a sexual
24  harassment complaint during his employment by
25  Judicial Watch or that his resignation from

Page 47

1  Judicial Watch was motivated by an employee's
2  sexual harassment complaint," do you see that?
3     A  Yeah.
4     Q  Again, that statement does not say that
5  you never spoke with Roger Stone, just that you've
6  never published that particular issue, correct?
7     A  It says what it says.
8     Q  And then it states "Any statement by Roger
9  Stone regarding Klayman was made without my
10  knowledge or information and therefore I did not
11  intend and could not intend to harm Klayman or his
12  reputation," do you see that?
13    A  Yes.
14    Q  Now, you're not saying in that statement
15  that you didn't communicate with Roger Stone.
16  You're saying that you didn't know that he was
17  going to republish anything about me, correct?
18       MR. DRISCOLL:  Objection to form.  The
19  document speaks for itself.
20    A  The document speaks for itself.
21    Q  If you don't want to explain it that's
22  fine.
23    A  You're mischaracterizing it.
24    Q  I do agree.  It speaks for itself and
25  there's a lot of loopholes in it.

Page 48

1        MR. DRISCOLL:  Why don't you just ask him
2  the question.  Did he ever --
3        MR. KLAYMAN:  I will ask the questions
4  that I want to ask, Mr. --
5        MR. DRISCOLL:  All right.
6     Q  I want to turn to paragraph eight.
7        Do you see the statements in the last
8  sentence of paragraph eight where it says "To
9  support his claim Judicial Watch submitted
10  evidence demonstrating that Klayman was forced to
11  resign due to inappropriate conduct" and you list
12  three examples of your alleged inappropriate
13  conduct, do you see that?
14    A  Yeah.
15    Q  Now, you have in the last 16 years told
16  many people, and I'm excluding any attorneys,
17  exactly what is written in this affidavit and
18  which you swore to under oath?
19       MR. DRISCOLL:  I'm going to object to the
20  question and direct the witness not to answer that
21  question to the extent it's related to the other
22  lawsuit that is currently pending in the U.S.
23  District Court for the District of Columbia, Case
24  Number 06-cv-670.
25       MR. KLAYMAN:  That's not a basis to tell