UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LARRY KLAYMAN,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS FITTON, *et al.*<br><br>    Defendants. | Case No. 1:19-cv-02793-TSC |

**DEFENDANT'S MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

Defendants Thomas J. Fitton ("Fitton"), James F. Peterson ("Peterson"), Paul J. Orfanedes ("Orfanedes") and Christopher J. Farrell ("Farrell"), by counsel and pursuant to LCvR 7, hereby move this Court to declare Plaintiff Larry Klayman ("Klayman") a vexatious litigant and to enjoin him from future filings against these defendants without first obtaining pre-filing leave from the Chief Judge of this Court.

**OPPOSED MOTION**

On January 14, 2020, Klayman was notified of this motion and given the opportunity to consent to the relief requested herein. On January 15, 2020, Klayman provided notice that he opposes the motion and the relief requested. Klayman further stated that if the motion is filed, he will file a "cross motion for sanctions under Rule 11, 28 U.S.C. 1927 and the inherent authority of the court."

**INTRODUCTION**

Klayman plainly meets the definition of a vexatious litigant. As set forth herein, he has a lengthy history of unsuccessfully prosecuting actions *pro se*. Furthermore, he engages in a habit

of relitigating issues determined against him, ignoring court orders and filing frivolous motions and pleadings.

Defendants Fitton, Orfanedes and Farrell are the Directors of Judicial Watch, Inc. ("JW"). Since 2005, Klayman has engaged in a repetitive cycle of meritless claims, naming Fitton as a defendant in 10 separate cases, Orfanedes as a defendant in 7 cases and Farrell as a defendant in 5 cases. Not one of these cases yielded any judgment or finding against these Defendants. JW has also been named as a defendant by Klayman in at least 17 cases during the same period. Often, Klayman includes the same tired allegations regarding his perception of events that occurred more than 15 years ago. His motive for filing these cases began in 2003, when Klayman was forced to resign from JW or face an internal investigation into an admitted inappropriate relationship with a JW employee, admitted physical assault against his former spouse (in the presence of his young children) and suspicion that he used JW assets to pursue the inappropriate relationship. Since then, Klayman has continuously campaigned to harm the Defendants' reputations and discredit their achievements.

To obviate future waste and expense associated with Klayman's vexatious tactics, Defendants move this Court to declare him a vexatious litigant and require that he furnish security in this action, if it moves forward, and obtain a pre-filing order granting leave to file any future actions against these Defendants.

## LEGAL STANDARD

"The constitutional right of access to the courts . . . is neither absolute nor unconditional." *Caldwell v. Obama*, 6 F. Supp. 3d 31, 49 (D. D.C. 2013) (citing *In re Green*, 669 F.2d 779, 785 (D.C. Cir. 1981)). Courts have "an obligation to protect and preserve the sound and orderly administration of justice…." *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985) (citing *In Re Martin-Trigona*, 737 F.2d 1254, 1262 (2d Cir. 1984)). While the Court should be

careful not to unduly impair a *pro se* litigant's constitutional right of access to courts, when the litigant continues to file frivolous, duplicative or harassing lawsuits, "a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban*, 768 F.2d at 1500. For example, the All Writs Act gives this Court the inherent power to enter pre-filing orders against vexatious litigants and others. 28 U.S.C. § 1651. "[I]t is now also well settled that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice." *Urban*, 768 F.2d at 1500.

In the D.C. Circuit, courts are required to complete three steps before imposing injunctive relief for vexatious litigation. To balance due process rights with the goal of ending groundless, vexatious litigation, the Court is instructed to: (1) provide notice and an opportunity to be heard; (2) develop a record to review that ensures the litigant's due process rights are not violated; and (3) make substantive findings as to the frivolous and harassing nature of the litigant's actions. *Caldwell*, 6 F. Supp. 3d at 50.

## KLAYMAN'S HISTORY OF LITIGATION ABUSE

Although Klayman files almost all actions against these Defendants in a *pro se* capacity, he is not the typical *pro se* litigant. Klayman is a member of the District of Columbia Bar (D.C. Bar No. 334581) and admitted to practice before this Court. He has over 40 years of experience as a litigator and trial attorney. The following is a list of litigations filed by Klayman against the Defendants that are currently pending or were previously adjudicated against him:

Case 1.   *Cobas v. Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, Christopher J. Farrell, and Irene Garcia*, Case No. 05-17413 CA 01 (Miami-Dade Co. Cir. Ct.): This action was filed in Miami-Dade County Circuit Court on August 25, 2005 alleging

3

defamation. Defendants' motion to dismiss was granted on July 31, 2006, dismissing the action with prejudice. Exhibit A (July 31, 2006, Order).

Case 2. *Klayman v. Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, and Christopher J. Farrell*, Case No. 06-cv-670-CKK (D. D.C.): This action was filed on April 4, 2006 alleging claims for fraudulent misrepresentation, breach of contract, unjust enrichment, false advertisement under the Lanham Act, unauthorized publication of name or likeness under Fla. Stat. 540.08, breach of the Confidential Severance Agreement, rescission and defamation. Exhibit B (Second Amended Complaint). By June 6, 2009, Defendants obtained summary judgment on all but five isolated breach of contract allegations against JW. In 2018, Klayman's limited claims and the counterclaims filed by JW and Fitton were tried before a jury. On March 18, 2019, a final judgment was entered in favor of JW in the amount of $2,430,000 and in favor of Fitton in the amount of $500,000. Examples of Klayman's vexatious and obstreperous actions in this case are evident from the following:

- Monetary sanctions were awarded to JW in the amount of $6,583 for discovery abuses by Klayman. *See* Case No. 06-cv-670-CKK at ECF Nos. 199 and 231.

- Evidentiary sanctions were imposed for Klayman's willful refusal to provide any information responsive to basic discovery requests. The Court imposed a sanction that "prohibited [Klayman] from testifying to or introducing into evidence any documents in support of his claims for damages or in support of his defenses to Defendants' counterclaims". *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84, 96 (D.D.C. 2009). Klayman did not produce "**any documents** responsive to Defendant's discovery requests" and made "no representation that he will **at any point** make any efforts to produce the responsive documents at issue". *Id*. (emphasis

in original). Klayman's refusal to participate in discovery placed JW in the precarious position of defending against claims for which it was unable to obtain information necessary to evaluate the merits of the claim or potential defenses.

- A Motion to Strike was granted to prevent Klayman from circumventing the Court's 2009 sanction. Klayman included numerous witnesses, exhibits, deposition designations and claims in the parties' Joint Pre-Trial Statement. In addition to striking the impermissible additions, the Court imposed further sanctions based on Klayman's long pattern of abuse:

  > Klayman's consistent pattern of engaging in dilatory tactics, his disobedience of Court-ordered deadlines, and his disregard for the Federal Rules of Civil Procedure and the Local Rules of this Court, coupled with the patent failure of the Court's use of lesser sanctions in the past to have any discernible effect on Klayman's conduct in this litigation.

  *Klayman v. Judicial Watch, Inc.*, 802 F. Supp. 2d 137, 139 (D.D.C. 2011). Not only were Klayman's defective contributions to the Joint Pretrial Statement (including witnesses and exhibits) stricken but he was barred from introducing any witnesses or exhibits at trial for any purpose. *Id*. at 151.

- Refusing to acknowledge that his abusive and unfair tactics caused the sanctions, Klayman commenced an effort to remove Judge Kollar Kotelly from the case, delay the trial and relitigate the issues. From 2011 through 2018, Klayman filed 4 motions to recuse or disqualify Judge Kollar Kotelly that were all based on the same baseless allegations. *See* Case No. 06-cv-670-CKK at ECF Nos. 298, 345, 414 and 606. In addition, he filed an interlocutory appeal, a writ of mandamus and at least one

motion to reconsider the denial of a motion to disqualify. *See* Case No. 06-cv-670-CKK at ECF Nos. 320, 370 and 587.

At the conclusion of proceedings before the trial court, the docket contained more than 600 entries, including more than 15 discovery motions, multiple sanctions motions and duplicative efforts by Klayman to avoid the sanctions imposed by the Court. Case 2 is currently on appeal to the U.S. Court of Appeals for the D.C. Circuit where Defendants' Motion to Dismiss for lack of jurisdiction and Motion for Summary Affirmance are pending.

Case 3.    *Klayman v. Judicial Watch, Inc. and Thomas J. Fitton*, Case No. 07-22413-AJ (S.D. Fla.): This action was filed on July 23, 2007 in Miami-Dade County Circuit Court alleging violation of Florida Stat. 540.08 for unauthorized publication of name or likeness. Exhibit C (Complaint). After removal to the U.S. District Court for the Southern District of Florida, the case against Fitton was dismissed on February 22, 2008 for lack of personal jurisdiction. Exhibit D (February 22, 2008, Order). On September 30, 2008, summary judgment was granted in favor of Judicial Watch with the court noting that Klayman's refiling in Florida appeared to be an act of "forum shopping" after the claim was dismissed from Case 2. Exhibit E (September 30, 2008, Order)

Case 4.    *Benson v. Judicial Watch, Inc. and Thomas J. Fitton*, Case No. 2007-CA-0520 B (D.C. Super. Ct.): This case was refiled on January 1, 2007 after the Benson's claims for fraudulent misrepresentation, breach of contract and unjust enrichment were dismissed from Case 2. Near the end of discovery, Klayman entered his appearance as counsel for Plaintiff Benson. JW objected because her claims arose while Klayman was general counsel for JW and related to a fundraising program that he created and supervised. Following briefing on a motion to disqualify Klayman as counsel for the plaintiff based on a conflict of interest, Benson voluntarily dismissed

her claims on August 24, 2007 without any further adjudication. Exhibit F (June 28, 2007, Motion to Disqualify) and Exhibit G (Stipulation of Dismissal).

Case 5.    *Paul v. Judicial Watch, Inc., Thomas J. Fitton, and Paul J. Orfanedes*, Case No. 07-cv-279-RCL (D. D.C.): This action was filed on February 6, 2007 alleging breach of contract, breach of fiduciary duty, professional malpractice, unjust enrichment, Lanham Act violations and appropriation of name and likeness. The plaintiff, Peter Paul, was a former client of JW. Here, the allegations of the Complaint arose from JW's legal representation of Paul when Klayman was the principal attorney providing those legal services and managing the case. On March 19, 2008, Klayman entered his appearance as counsel for Mr. Paul. Exhibit H (Entry of Appearance). To protect its confidential information and to prevent Klayman from switching sides, JW was compelled to file a motion to disqualify Klayman. The motion was granted finding that Klayman committed a clear violation of Rule 1.9 of the Rules of Professional Conduct. *Paul v. Judicial Watch, Inc.*, 571 F. Supp. 2d 17, 22 (D. D.C. 2008) ("Klayman's present representation of Paul is the very type of "changing of sides in the matter" forbidden by Rule 1.9 of the Rules of Professional Conduct"). The case was subsequently dismissed on February 2, 2009 due to the Plaintiff's failure to participate in discovery. Exhibit I (February 2, 2009, Order).

Case 6.    *Klayman v. Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, and Christopher J. Farrell*, Case No. 07-37924 CA 08 (Miami-Dade Co. Cir. Ct.): This case was filed on November 6, 2007 alleging false light invasion of privacy based on a July 2007 Newsletter informing JW supporters of the ongoing dispute between JW and Klayman. Fitton, Orfanedes and Farrell moved to dismiss for lack of personal jurisdiction. Exhibit J (Third-Amended Complaint). On August 27, 2008, a General Magistrate issued a Report and Recommendation finding, once again, that there was no personal jurisdiction to sue the individual defendants because Klayman

did not allege facts sufficient to support long arm jurisdiction or the commission of a tort directed toward Florida. Exhibit K (August 27, 2008, Order). The case was subsequently dismissed on December 18, 2009.

    Case 7.    *Klayman v. Judicial Watch, Inc.*, Case No. 2010-SC(3)-5626 (D.C. Super. Ct. - Small Claims): This case was filed in the District of Columbia Small Claims Division on September 21, 2010 for breach of the Confidential Severance Agreement alleging that JW failed to provide Klayman with copies of his television appearance videotapes. JW counterclaimed for attorney fees under the contract. Trial was held on September 21, 2010, during which JW successfully moved to dismiss the claim for lack of jurisdiction and obtained judgment for $750.00 in attorney fees. Exhibit L (Final Orders). Klayman moved for judicial review of the magistrate's Order. Although Klayman failed to appear for the November 30, 2010, hearing, the judgment was affirmed on the merits. Exhibit M (December 1, 2010, Order).

    Case 8.    *Klayman v. Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, Christopher J. Farrell, and Constance Ruffley*, Case No. 13-20610-Altonaga/Simonton (S.D. Fla.): This cased was filed on February 19, 2013 claiming defamation based on the alleged statement of a JW employee at a function in California. As before, Klayman alleged that Fitton, Orfanedes and Farrell acted in concert and directed the statement to be made without including any facts to support the allegations. On September 5, 2013, Fitton, Orfanedes and Farrell were dismissed for lack of personal jurisdiction. Exhibit N (September 5, 2013, Order) at p. 21.[1]

    Case 9.    *Klayman v. Judicial Watch, Inc.*, Case No. 2015-CA-0232 (D.C. Super. Ct.): This case was filed on January 13, 2015 seeking rescission of the Confidential Settlement

---

[1]    At trial, judgment was entered in favor of Klayman and against JW based on *respondeat superior*.

Agreement based on allegations that were identical to those in Case 8. Exhibit O (Complaint). On October 19, 2016, the court dismissed the case for failure to state a claim and for *res judicata*. Exhibit P (October 19, 2016, Order). Klayman appealed and the District of Columbia Court of Appeals affirmed the dismissal on July 9, 2018. Exhibit Q (July 19, 2018, Opinion).

Case 10.   *Klayman v. Judicial Watch, Inc.*, Case No. 16-mc-1430-RBW (D. D.C.): This case was filed on July 18, 2016 seeking double collection of the judgment entered in Case 8. Initially, JW attempted to satisfy the judgment by making payment into the court registry for the Southern District of Florida. However, by Order dated May 8, 2015, the court directed that the funds be returned to JW, noting that multiple interests in the funds entitled JW to file an interpleader action. Shortly after the judgment, Klayman's former spouse, Stephanie Ann Luck ("Luck")[2], served JW with a Creditor's Bill filed against Klayman in the Cuyahoga County, Ohio, Court of Common Pleas ("Ohio Court"). Unable to collect from Klayman directly, Luck sought to have JW pay the judgment to her, to partially satisfy a $325,000 judgment entered against Klayman in another Ohio Court case styled as *Luck v. Klayman*, Case No.: CV14-828766. Despite having voluntarily paid the funds into the Ohio Court for the interpleader action, Klayman pursued a second recovery from JW, an effort that circumvented the jurisdiction of the Ohio Court. After substantial cost, including the necessity of hiring counsel in 3 jurisdictions (Florida, Ohio and D.C.), JW successfully moved to dismiss the collection action. Exhibit R (Motion to Dismiss) and Exhibit S (May 8, 2019, Order). On appeal, the U.S., Court of Appeals for the D.C. Circuit deemed

---

[2]   Klayman and his former spouse Luck (a/k/a Stephanie DeLuca) were engaged in protracted litigation in which Klayman repeatedly sued her attorneys. Klayman was subsequently declared a vexatious litigant by the U.S. District Court for the Southern District of Florida, which was affirmed by the U.S. Court of Appeals for the Eleventh Circuit. *Klayman v. DeLuca, et al.*, 712 F. App'x 930 (11th Cir. 2017).

the parties' positions to be so clear that summary affirmance was granted on September 20, 2019. Exhibit T (September 20, 2019, Order).

Case 11.    *Klayman v. Judicial Watch, Inc.*, Case No. 17-cv-0034-TJK (D. D.C.): This action was filed on January 8, 2017 alleging breach of the Confidential Severance Agreement, defamation and tortious interference with prospective business relations. Exhibit U (Complaint). Like the current case, Klayman alleged that JW defamed him based on the statement of a third-party where Klayman was not able to provide a factual basis for the nexus to JW. Following limited discovery, Klayman voluntarily dismissed the action with prejudice on May 21, 2018. Exhibit V (Stipulation of Dismissal).

Case 12.    *Klayman v. Judicial Watch, Inc.*, Case No. 2017-CA-4252 B (D.C. Super. Ct.): This case was filed on June 20, 2017 claiming breach of the Confidential Severance Agreement based on JW's refusal to produce copies of videotaped discovery depositions in which Klayman participated more than 15 years earlier. Exhibit W (Complaint). On September 5, 2019, the court granted summary judgment to JW finding that the requested materials did not remotely fall within the scope of the agreement. Exhibit X (September 5, 2019, Order).

Case 13.    *Freedom Watch, Inc. v. Judicial Watch, Inc., et al.*, Case No. 17-22627-Moreno/Turnoff (S.D. Fla.): This case was filed on July 13, 2017 alleging that JW was part of an anti-competitive conspiracy to exclude Klayman from participation as a sponsor or speaker at the Conservative Political Action Conference. JW's motion to dismiss for failure to state a claim was granted on January 29, 2018, finding that Klayman failed to plead an antitrust injury. Exhibit Y (January 29, 2018, Order). Klayman's subsequent appeal was dismissed for lack of prosecution on April 16, 2018. Exhibit Z (April 16, 2018, Order).

Case 14. *Klayman v. Judicial Watch, Inc.*, Case No. 2017-CA-4940 B (D.C. Super. Ct.): This case was filed on July 20, 2017 alleging that JW breached the Confidential Severance Agreement by failing to provide him with copies of any artist renderings of him by courtroom artists, any photographs with his image, and any television show videos of his appearances on various networks. Exhibit AA (Complaint). This case highlights Klayman's vexatious nature. The demand for the materials was sent at 4:04 p.m. on Monday, July 17, 2017 and imposed a deadline to respond of noon on Tuesday, July 18, 2017. *Id*. at ¶ 8. Within 24 hours of his arbitrary deadline, and before JW could respond, Klayman filed the lawsuit against JW. Finding that nothing in the contract required a response within 24 hours, the court dismissed the Complaint on October 24, 2017. Exhibit BB (October 24, 2017, Order). Acknowledging the long list of actions filed by Klayman against JW, the court noted: "

> The number and timing of these other lawsuits raises the inference of "improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and appears "frivolous" as to offend Rule 11. However, the Court is without sufficient basis to award sanctions at this stage in this action

*Id*. at p. 4.

Case 15. *Klayman v. Judicial Watch, Inc.*, Case Nos. 2018-CA-0135 B/ 2018-CA-2230 B (D.C. Super. Ct.): Undeterred by the dismissal of Case 14, Klayman refiled the action on January 5, 2018 but failed to effect service. Exhibit CC (Complaint). On March 12, 2018, the action was dismissed for lack of service. Exhibit DD (March 12, 2018, Dismissal). On March 30, 2018, Klayman filed the action for a third time seeking the exact same relief. Exhibit EE (Complaint). On July 5, 2018, the court granted a motion to dismiss finding that Klayman failed to state a claim for specific performance or to even identify an obligation within the contract that was breached. Exhibit FF (July 5, 2018, Order).

Case 16. *Klayman v. Thomas J. Fitton*, Case No. 19-20544-Martinez/AOR (S.D. Fla.): This case was filed on February 11, 2019 alleging defamation for a statement made by a third-party, Roger Stone. Exhibit GG (Complaint). Fitton successfully moved for dismissal based on a lack of personal jurisdiction. Exhibit HH (July 11, 2019, Report and Recommendation). On October 31, 2019, the court adopted the Report and Recommendation and granted the dismissal. Exhibit II (October 31, 2019, Order).

Case 17. *Klayman v Judicial Watch, Inc., Thomas J. Fitton, Paul J. Orfanedes, and Christopher J. Farrell*, Case No. 19-cv-2604-TSC (D. D.C.): This action was filed on August 28, 2019 pursuant to Fed. R. Civ. P. 60 seeking to set aside the judgment in Case 2 (*Klayman v. Judicial Watch, Inc., et al.*, Case No. 06-670 (CCK) (D. D.C.)). Exhibit JJ (Complaint). Without any response by JW, Fitton, Orfanedes or Farrell, and because the action involves the same parties and issues as Case 2, the Court stayed the action pending the outcome on appeal. *See* Minute Order dated September 22, 2019 (stating "This action is hereby STAYED pending resolution of the appeal in Klayman v. Judicial Watch 6-cv-670-CKK, which involves many of the same parties as the instant case.").

Case 18. *Klayman v Judicial Watch, Inc., Thomas J. Fitton, James F. Peterson, Paul J. Orfanedes and Christopher J. Farrell*, Case No. 19-cv-2793-TSC (D. D.C.): This action, which is presently before the Court, was filed on August 28, 2019 claiming defamation and related causes of action based on an alleged defamatory statement published on the internet by a third-party, Roger Stone. There are few factual allegations in the Complaint. The claims are based on conclusions and speculation not based in fact. The action was originally filed and dismissed by the

U.S. District Court for the Southern District of Florida for lack of jurisdiction.[3] *See* Case 16. Despite the absence of sufficient factual allegations to establish a tort by the Defendant in Case 16, Klayman filed this action with few, if any, additional factual allegations but added the remaining members of JW's Board of Directors and Peterson as defendants.

## ARGUMENT

Klayman's litigation history against the Defendants demonstrates a trail of meritless cases filed to harass, intimidate and inflict needless costs. The statistics demonstrate his bad faith and vexatious nature. No case was initiated by JW, Fitton, Orfanedes or Farrell. All litigation between these parties was filed by Klayman who has not successfully prosecuted any claim against Fitton, Orfanedes or Farrell, individually or collectively. In contrast, JW has obtained two judgments against Klayman in the amounts of $2,430,000 and $750, and Fitton has obtained a judgment against Klayman in the amount of $500,000. In addition, JW was awarded $6,583 in discovery sanctions.

- Of the 19 cases filed,[4] 15 did not survive preliminary or dispositive motions filed by the named defendants. Of the 4 remaining cases, 2 were voluntarily dismissed (Cases 4 and 11), one is on appeal (Case 2) and one is stayed (Case 17).
- Of the 5 cases that were dismissed for lack of jurisdiction, 4 were filed in Florida courts. *See* Cases 3, 6, 7, 8 and 16.  While Klayman could have

---

[3]    During the Florida Action, Klayman was permitted to depose Fitton for two hours regarding jurisdictional facts, including contact between Stone and Fitton or any other JW employee. The deposition yielded no information to support such contact or Klayman's allegations.

[4]    Case 15 was filed and dismissed twice.

- obtained jurisdiction in a D.C. court, he never refiled any of the Florida actions except Case 16.

- Of the 19 cases filed, 6 were filed in Florida, A location chosen most likely to harass or inconvenience the named defendants who are all residents of the D.C. area and were compelled to retain counsel in a foreign jurisdiction.

- In each of the Florida actions, Klayman alleged that he is a resident of Florida. In Case 16, his Florida address was proven to be a UPS P.O. box in a shopping center. Klayman refuses to provide his actual physical residence, however, JW has evidence demonstrating that he lives in California with his wife Dina James.

- Case 10, which sought to collect a judgment that was already paid into an interpleader action in the Ohio Court, required JW to retain counsel in two separate jurisdictions (D.C. and Ohio) in addition to its Florida counsel to avoid Klayman's attempt to circumvent the court's jurisdiction.

- Klayman filed 5 meritless breach of contract cases, each of which failed to state a claim within the scope of the parties' Confidential Settlement Agreement resulting in dismissal. See Cases 11, 12, 14 and 15 (twice).

- Klayman filed 2 cases in which he impermissibly represented a former JW client and a donor in matters involving his actions as general counsel for JW. One case involved a building fund program that he created and for which he advised JW regarding its duties and obligations (Case 4). In the other case, Klayman filed a legal malpractice claim as counsel for Peter Paul against JW based on legal services that he provided to Mr. Paul while he

        was general counsel for JW and functioned as the principal attorney providing legal services to Mr. Paul. He willfully pursued claims against his form client, JW, despite the clear violation of Rule 1.9 of the Rules of Professional Conduct.

- All claims filed against the individual defendants and all claims filed against JW (except Case 8) were unsuccessful actions yielding nothing but harassment and expense.

- Because Klayman handled these actions as a *pro se* plaintiff, he was not required to retain counsel or incur the expense of litigation, all the while knowing that his litigations caused economic harm to the Defendants.

Based on the record established herein, Judicial Watch, Fitton, Orfanedes and Farrell are entitled to an injunction against future filings by Klayman absent leave of this Court's Chief Judge. Procedural due process is satisfied because Klayman receives notice of this motion and has an opportunity to respond to the issues raised herein as a *pro se* party to this litigation. *See* LCvR 7. The pleadings and orders attached as exhibits hereto demonstrate that Klayman's litigations are frivolous and without merit. As an experienced attorney whose complaints often begin with allegations of his many accomplishments, Klayman knows that his cases are without merit and are filed to harass the defendants. For example, in Case 2, where certain of Klayman's counts survived preliminary motions, he willfully refused to produce discovery necessary to evaluate the alleged claims or damages. As a result, the Court imposed harsh sanctions to penalize his refusal to participate in the discovery process. *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 84 (D.D.C. 2009). Thereafter, Klayman attempted to circumvent the sanctions by adding witnesses and exhibits to the joint pretrial statement, which resulted in additional sanctions. *Klayman v. Judicial*

*Watch, Inc.*, 802 F. Supp. 2d 137, 139 (D.D.C. 2011). Klayman remains unrepentant for these actions and continues to challenge the Court's actions that are based solely on his recalcitrance and obstreperous tactics. *See* Case 17. Following these sanctions, Klayman embarked on a campaign to have Judge Kollar Kotelly removed from the case by filing at least 4 motions to disqualify and then independently suing the Judge and the Judicial Conference. See *Klayman v. Kollar Kotelly, et al.*, Case No. 1:11-cv-01775-RJL (D. D.C.).

Klayman demonstrates no remorse for his conduct, the burden it imposes on litigants or the inefficiency it causes to the court system. Indeed, when notified of the Defendants' intention to file the motion in compliance with the LCvR 7(m) duty to confer, Klayman's only response was a belligerent threat to pursue sanctions against Defendants' counsel if the motion was filed. <u>Exhibit KK</u> (Email Exchange).

## **CONCLUSION**

The absence of merit or substance for nearly all of Klayman's litigation against these Defendants demonstrates that his actions are both frivolous and harassing. Klayman has demonstrated a pattern of vexatious litigation against these Defendants that warrants the imposition of a pre-filing injunction that require leave of court prior to filing any further litigation.

WHEREFORE, Defendants respectfully requests that this Court GRANT the Motion and enter an injunction prohibiting Klayman from filing any further claims against these Defendants without first obtaining leave from the Chief Judge of this Court, that that Klayman be required to post security for all pending and future actions against the Defendants.

| | |
|---|---|
| Dated: January 15, 2020 | Respectfully submitted, |

/s/
_____
Richard W. Driscoll (436471)
D<span>RISCOLL</span> & S<span>ELTZER</span>, PLLC
300 N. Washington St., Suite 610
Alexandria, Virginia 22314
703.822.5001 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*

## CERTIFICATE OF LCvR 7(m) COMPLIANCE

I HEREBY CERTIFY that on January 14 and 15, 2020, efforts were made to consult with opposing counsel concerning the relief requested herein. No area of agreement being reached, and clear opposition being expressed by Plaintiff Klayman, Defendants are compelled to file the subject Motion to obtain the relief requested.

/s/
_____
Richard W. Driscoll

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of January 2020, a copy of the foregoing Motion was served by the Court's ECF system upon all counsel of record listed on the Notice of Electronic Filing.

/s/
_____
Richard W. Driscoll