**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN, an individual
c/o 7050 W. Palmetto Park Rd. #15-287
Boca Raton, FL 33433

Plaintiff,

v.

THOMAS J. FITTON, an individual
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

and

JAMES F. PETERSON, an individual,
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

and

PAUL ORFANEDES, an individual,
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

and

CHRIS FARRELL, an individual
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

Defendants.

**Case No.: 1:19-cv-02793**

**The Honorable Tanya S. Chutkan**

**PLAINTIFF LARRY KLAYMAN'S OPPOSITION TO DEFENDANTS' MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT AND CROSS MOTION FOR SANCTIONS PURSUANT TO 28 U.S.C. § 1927 AND THIS COURT'S INHERENT AUTHORITY**

Plaintiff Larry Klayman ("Plaintiff Klayman") respectfully opposes Defendant Thomas J. Fitton's ("Defendant Fitton"), Paul J. Orfanedes' ("Defendant Orfanedes"), Chris Farrell's ("Defendant Farrell") and James F. Peterson's ("Defendant Peterson") Motion to Declare

Plaintiff a Vexatious Litigant ("Defendants' Motion"), moves for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority and hereby submits as follows:

## INTRODUCTION

Defendants' Motion is yet another attempt to defame, harass, smear and threaten Plaintiff Klayman, just a few of the same torts that required and compelled Plaintiff Klayman to seek redress against them in the first instance. In their Motion, Defendants falsely claim that:

> [Plaintiff Klayman's] motive for filing these cases began in 2003, when Klayman was forced to resign from JW or face an internal investigation into an admitted inappropriate relationship with a JW employee, admitted physical assault against his former spouse (in the presence of his young children) and suspicion that he used JW assets to pursue the inappropriate relationship.

Defs. Motion at p. 2.

False and defamatory smears like this are the reason for the extended litigation between the parties and are strategically intended to prejudice Plaintiff Klayman with this Court, which is presiding over two pieces of litigation which go to the heart of the judgment Defendants obtained against Plaintiff Klayman by fraud and other misconduct. This false recitation of facts is Defendants' contrived, manufactured narrative because they know that Plaintiff Klayman voluntarily left Judicial Watch to run for the U.S. Senate and they decided to defame him because they feared the future competition.[1] Plaintiff Klayman never "admitted" he had an inappropriate relationship with an employee and never "admitted" that he committed a physical assault against his wife because he did not. If anyone misused assets from Judicial Watch it was

[1] It is no coincidence that the president of Judicial Watch, Tom Fitton, is not a lawyer and that Judicial Watch has no one on its legal staff that knows how to try a complex lawsuit, other than simple Freedom of Information Act request cases. Tellingly, Defendant Fitton lied to Plaintiff Klayman when he hired him as an assistant by presenting a false resume that stated he was a graduate of George Washington University. Plaintiff Klayman is a trial lawyer with forty-three years of experience and has been in good standing in the District of Columbia Bar continuously for forty years. *See* Exhibit 1.

its president, Defendant Fitton and Defendants Orfanedes and Farrell, for collecting over $1,400,000 from donors to buy a building and – over seventeen years later – never purchasing and thus misappropriating the funds to buy the building! In this regard, after being sued for fraud and misappropriation of donations, Defendants were forced to pay back a donor, Louise Benson, who pledged $50,000 to buy the naming rights for Defendant Fitton's office, who contributed a down payment of $15,000.[2] Moreover, it is simply false that Plaintiff Klayman "campaigned to harm the Defendants' reputations and discredit their achievements." *Id*. Indeed, it is Defendants who have engaged in a seventeen-year old campaign to harm Plaintiff Klayman as evidenced by a jury verdict returned in Plaintiff Klayman's favor against Judicial Watch for maliciously defaming him, which included punitive damages. *See* Exhibit 2.

In essence, notwithstanding the total mischaracterization of the cases Defendants cite involving the parties[3], that Defendants find themselves having to defend another action against them says nothing about Plaintiff Klayman, other than that he exercises his constitutional right to seek redress from the courts for the wrongs committed against him. But it speaks volumes about Defendants themselves. Plaintiff Klayman brought this case and a related case now before this Court [*Klayman v. Judicial Watch, Inc*., 19-cv-02604 (D.D.C.)] against Defendants because they have engaged in a pattern and practice of harassing and defaming Plaintiff Klayman and his family since his voluntary departure from Judicial Watch in 2003, as well as fraudulently obtaining a judgment for $2,800,000 based largely on the false premise that he was ousted from Judicial Watch because of a sexual harassment complaint. The breadth of the false stories

[2] A simple review of Judicial Watch's 990 tax returns found at www.judicialwatch.org verify that seventeen years later it has not used the funds, as promised even to now deceased donors, to buy the building but instead converted and misappropriated these donations.

[3] Several of the cases Defendants refer to were dismissed on jurisdictional grounds, not on the merits, and were refiled elsewhere, thereby creating the impression that there were more cases than in reality.

Defendants swirl around Washington, D.C., Florida and elsewhere is so vast that Fitton and the other Defendants cannot even keep their false stories straight, one minute falsely spewing that Defendants Fitton and Orfanedes forced Plaintiff Klayman out of Judicial Watch because of a sexual harassment complaint, the next minute talking out of the other side of their mouths with Defendant Fitton – to try to protect himself and not implicate himself with Stone – swearing under oath in a deposition in another related defamation case that there was no sexual harassment complaint and in fact Plaintiff Klayman was not ousted because of one. *See* Exhibit 3.

According to U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") precedent, and indeed other appellate and district courts around the country, Defendants do not come close to meeting their burden of showing that Plaintiff Klayman fits the stringent definition of a vexatious litigant, as it is an extraordinarily high standard and federal and state courts are more than hesitant to declare any plaintiff – particularly a constitutionally protected *pro se* plaintiff – a vexatious litigant. Defendants knew that they fell well short of this demanding standard before they filed their Motion and their lack of *any* analogous case law to support their position proves it. Defendants should thus be sanctioned and ordered to pay attorneys' fees and costs to Plaintiff Klayman for having to spend valuable time and resources on their frivolous Motion. *See* Exhibit 4.

To add insult to injury, this case underscores just how far Defendants will go to harm Plaintiff Klayman, as they have now been caught working and conspiring with convicted felon Roger Stone ("Stone"). Before he was indicted, Stone not coincidentally appeared on a widely published video on Infowars and falsely published: "He [Plaintiff Klayman] was ousted at Judicial Watch. Ask Tom Fitton why he left. He left because of a sexual harassment complaint." Compl. at ¶ 20.

**Defendants cannot continue to commit serious and damaging torts against Plaintiff Klayman, unrealistically expect not to be sued, and then strategically yet frivolously file a motion to declare him a vexatious litigant to prejudice cases before this Court**. **The only party acting in bad faith is Defendants**. The retaliatory reason Defendants filed their Motion is simple: Plaintiff Klayman will soon depose Stone in Florida. Defendants fear what Stone will disclose implicating them in the defamation that Plaintiff Klayman was ousted from Judicial Watch because of a sexual harassment complaint and are manufacturing another false narrative in order to prevent Plaintiff Klayman from discovering the full extent of Defendants' defamation and harm and collaboration with convicted felon Stone.

## ARGUMENT

Defendants are tasked with the very heavy burden of showing that Plaintiff Klayman is a vexatious litigant, an "extreme remedy" in any event. *Duru v. Mitchell*, 289 F. Supp. 3d 112, 117 (D.D.C. 2018). A vexatious litigant injunction, such as the one Defendants attempt here, is an "extreme sanction and should be imposed in only the most egregious cases." *In re Powell*, 851 F.2d 427, 434 (D.C. Cir, 1988); *see also In re Oliver*, 682 F.2d 443, 445 (3d Cir. 1982) (an injunction "is an extreme remedy, and should be used only in exigent circumstances."). Such injunctions should "remain very much the exception to the general rule of free access to the courts . . ." *In re Powell*, 851 F.2d at 431; *see also Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir. 1980) (same).

The D.C. Circuit has, accordingly, "established a few basic guidelines for [such] injunction[s]." *In re Powell*, 851 F.2d at 431. In particular, the Court must "look to both the number and content of the filings as indicia of frivolousness or harassment" and must "make substantive findings as to the frivolous or harassing nature of the litigant's actions." *Id*. In order

for a Court to consider this type of injunction, the "orderly and expeditious administration of justice" must have been "so impeded as to require such an extreme sanction." *Id*. at 435 (citing *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985)).

*In re Powell*, 851 F.2d 427 (D.C. Cir, 1988), for example, two federal prisoners filed numerous civil actions in the district courts involving Freedom of Information Act ("FOIA") requests and other issues. *In re Powell*, 851 F.2d at 428-29. Within only two years, one prisoner filed sixteen actions in district court. *Id*. at 428, 433. Even though the D.C. Circuit found Powell's filings to "suggest a litigious propensity, about which [the Court was] duly concerned," because it found that Powell's sixteen filings were not "so clearly harassment of the district court as to warrant issuing an injunction[,]" it reversed the district court's order enjoining the prisoners from filing new civil actions. *Id*. at 433.

Similarly, in the recent case of *Duru v. Mitchell*, 289 F. Supp. 3d 112 (D.D.C. 2018), the plaintiff filed an action against nearly thirty defendants concerning a financial dispute that led to a separate action. *Id*. at 113. Six of the defendants filed motions to dismiss asserting various defenses and several other defendants moved that the court declare plaintiff a vexatious litigant. The court advised plaintiff that she needed to respond to defendants' motions and that she had an opportunity to be heard in opposition to defendants on the vexatious litigant issue. Plaintiff failed to respond to the motions to dismiss or the vexatious litigant motion and instead filed more than twenty motions for default judgment. *Id*. After the court denied the motions for default judgment, attaching a copy of Federal Rule of Civil Procedure 4 to its order, it gave plaintiff another opportunity to effect service on defendants, even though the deadline to serve had elapsed several months earlier. The court gave plaintiff a new deadline and mailed a copy of its order to her home. Two days later, the court received a notice of change of address and because she

might not have received the court's order before, the court again extended the deadline and directed the Clerk to mail the order to plaintiff's new address. The plaintiff never responded at all. *Id*.

There, even though the plaintiff never opposed the defendants' motion to declare her a vexatious litigant, even though the court "concluded that [the plaintiff's] claims *in [that] action* [were] frivolous," and even though the defendants pointed out to the judge that a Texas court had already found the plaintiff to be a vexatious litigant, the court still declined to enjoin the plaintiff from filing further lawsuits because of that high threshold. *Id*. at 117 (emphasis in original).

Further, in *Roger v. Johnson-Norman*, 514 F. Supp. 2d 50 (D.D.C. 2007), the defendant sought an award of attorneys' fees and costs under the Fair Credit Reporting Act ("FCRA") as well as an order declaring the plaintiff a vexatious litigant. *Id*. at 51. For a period between 1998 and 2000, the parties had a romantic relationship and the district court had found that the instant case was "the latest chapter in a lengthy saga of alleged harassment and related litigation . . ." *Roger v. Johnson-Norman*, 466 F. Supp. 2d 162, 165 (D.D.C. 2006). While the court found that the plaintiff engaged in harassing conduct during the course of litigation, it still declined to enjoin him from filing future suits, cautioning that although it found the plaintiff's conduct harassing, "defendant has not demonstrated that plaintiff has engaged in the kind of pattern of harassment that warrants issuance of an injunction." *Roger*, 514 F. Supp. 2d at 53.

In *Speleos v. McCarthy*, 201 B.R. 325 (D.D.C. 1996), an appellant debtor challenged an order of the U.S. Bankruptcy Court for the District of Columbia that limited a trustee's obligations to provide her with certain information relating to her bankruptcy and required her to seek leave before filing suit (an order declaring her a vexatious litigant). *Id*. at 327. The bankruptcy court found that the plaintiff's complaint was "barred by collateral estoppel based on

numerous orders giving [the trustee] authority to take the actions complained of" and was "frivolous and failed to meet the standards of Rule 9011." *Id*. The court further found that the case was "unnecessarily prolonged by the plaintiffs' frivolous objections to practically every step the trustee has taken," that "[the plaintiff] has a history of filing frivolous lawsuits and objections," and that the plaintiff's actions "imposed upon the strained resources of the court." *Id*. at 328. The court's opinion concluded that, in addition to a monetary sanction, "a sufficient pattern of repeated frivolous conduct has been laid to warrant a limited injunction to protect the estate and its representatives against the prospect of further litigation and in the exercise of its discretion. . . [the Court] will impose an injunction." *Id*.

There, the district court reversed the bankruptcy court, finding that although "[the plaintiff's] conduct in the bankruptcy case suggests a litigious propensity worthy of concern[,]" that concern "does not support the issuance of an injunction." *Id*. at 331. The court found that the debtor's conduct, **while vexatious**, fell "**well below the level of abuse** found by other courts to have warranted limitations on the right of access to the courts." *Id.* (emphasis added).

The plaintiffs in *In re Powell*, *Duru*, *Rogers*, and *Speleos* come much closer to reaching the high threshold of being considered vexatious litigants than Plaintiff Klayman. Still, the courts refused to declare them as such. Plaintiff Klayman, a *pro se* party, has been forced to exercise his constitutional right to seek redress against Defendants because of their continued pattern and practice of misconduct, as evidenced by a jury verdict awarded in Plaintiff Klayman's favor which included punitive damages. *See* Exhibit 2. *Klayman v. Judicial Watch, et al*., Case No. 13-20610-Altonaga/Simonton (S.D. Fla.). Plaintiff did not engage in improper tactics and had a reasonable factual basis for filing his claims.

Defendants reference an irrelevant order by the U.S. District Court for the Southern

District of Florida which declared Plaintiff Klayman a vexatious litigant in an unrelated case concerning his former wife. Defendants fail to mention that the parties there were engaged in a decade-long custody battle where his wife kept his children away from him and made seriously false allegations against him, which proved to be false. Divorce is ugly. It's even uglier when children are involved. A Southern District of Florida ruling shows nothing about this case or the Defendants' own bad behavior here. Indeed, Defendants' fixation if not obsession with Plaintiff Klayman and his family and the misfortunate events that occurred between him and his former wife is what led to the jury verdict in favor of Plaintiff Klayman. There, Defendants accused Plaintiff Klayman of being convicted of a crime of not paying child support, which was false and defamatory. As if it concerned them in any event! More importantly, however, here, the law is not on Defendants' side. The defendants in *Duru*, for example, attempted the same argument by providing the court with an order from a Texas court which declared the plaintiff a vexatious litigant. The defendants there failed with that argument. *Duru*, 289 F. Supp. 3d at 117. So too should Defendants here.

Now, Plaintiff Klayman never "so impeded [the system] as to require such an extreme sanction [as an injunction]," *In re Powell*, 851 F.2d at 435, and never "so clearly harass[ed] [] the district court as to warrant issuing an injunction." *Id*. at 433. Even the court in *Rogers* found that while the plaintiff engaged in "harassing conduct" during the course of the litigation, it declined to enjoin him from filing future suits. *Rogers*, 514 F. Supp. 2d at 53. Plaintiff Klayman has not even engaged in harassing conduct.

Indeed, litigiousness alone does not support an issuance of an injunction. *In re Powell*, 851 F.2d at 434; *see also Moy v. United States*, 906 F.2d 467, 470 (9th Cir. 1990) (the plaintiff's claims must not only be numerous but also patently without merit); *Ruderer v. United States*, 462

F.2d 897, 899 (8th Cir. 1972). The focus must be on the number of suits that were frivolous or harassing in nature rather than on the number of suits that were simply adversely decided. *See De Long v. Hennessey*, 912 F.2d 1144, 1147-48 (9th Cir. 1990). Indeed, the mere fact that a plaintiff has had numerous suits dismissed against him is an insufficient ground upon which to make a finding of vexatiousness. *See Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 886 (9th Cir. 2012). The U.S. Supreme Court cautioned against courts concluding that a case is meritless just because it was dismissed.

> **[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation**. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412 (1978) (emphasis added).

This case is important as, yet again, Defendants have been caught lying. It is related to *Klayman v. Judicial Watch, Inc. et al.*, Case No. 19-cv-2604 (D.D.C.) before this Court which seeks to set aside the judgment in *Klayman v. Judicial Watch, Inc., et al.*, Case No. 06-cv-00670 (D.D.C.) because, among other reasons, that judgment was procured through fraud, was based on false numbers presented to the jury and false pretenses.

Because of Defendants' frivolous Motion, Plaintiff Klayman put Defendants' counsel on notice that he would seek sanctions (*see* Exhibit 4) pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Indeed, any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Id*. The purpose of 28 U.S.C. § 1927 is to allow the Court "to access attorney's fees against an attorney who frustrates the progress of judicial proceedings." *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992).

Defendants and their counsel's bad faith and frivolous filing of this Motion is precisely the kind of vexatious misconduct 28 U.S.C. § 1927 seeks to protect against. Here, all the elements are met. Defendants and their counsel acted unreasonably and vexatiously when they strategically filed their Motion which they knew or had reason to know is contrary to law. Undoubtedly, the Motion "multiplie[d] the proceedings[.]" 28 U.S.C. § 1927.

In addition to the powers deriving from 28 U.S.C. § 1927, it is well established in the D.C. Circuit that when "rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process," courts have an inherent power to impose sanctions for abusive litigation practices. *Shepherd v. American Broad. Cos*., 62 F.23d 1469, 1474 (D.C. Cir. 1995). Courts also have inherent authority to sanction litigation misconduct when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Service Co. v. Wildnerness Society*, 421 U.S. 240, 258-59 (1975).[4] Such power is government "by the control necessarily vested in courts to manage their own affairs so as to

---

[4] Importantly, Plaintiff Klayman has engaged in no alleged litigation misconduct in the two related cases before this Court.

achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc*., 501 U.S. 32, 42 (1991). The Court's inherent authority is most commonly invoked when there is no court order in place regarding the conduct at issue. *See, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp*., 306 F.3d 99, 106-07 (2d Cir. 2002) ("[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs").

Bad faith "may be found, not only in the actions that led to the lawsuit, but in the conduct of the litigation." *Hall v. Cole*, 412 U.S. 1, 4 (1973); *see also Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219-20 (D.C. Cir. 1991) (bad faith includes "the filing of a frivolous complaint or meritless motion, or discovery-related misconduct").

Here, when Defendants and their counsel multiplied the pleadings herein that were unnecessary and non-meritorious – and contrary to law – requiring Plaintiff Klayman, acting *pro se*, to spend a considerable amount of time and financial resources preparing a response, Defendants and their counsel acted in bad faith for strategic reasons. Defendants' insurance carrier counsel does not mind running up the bill to his clients but Plaintiff Klayman is forced to spend his and his staff's time to respond at a billing rate of $695.00 an hour just to prepare and file this pleading. At this rate, Plaintiff Klayman has incurred thus far over $7,000.00 in legal fees lost in billing.

In short, Defendants filed their Motion only to run up unnecessary time, legal fees and costs. This also wastes the valuable resources of this honorable Court. This misconduct is sanctionable and Defendants and their counsel should respectfully have their Motion stricken and an order entered against them, sanctioning them by paying for Plaintiff Klayman's fees in having to respond to such a frivolous motion.

**CONCLUSION**

"The due process clause requires that every man shall have the protection of his day in court. *Truax v. Corrigan*, 257 U.S. 312, 332 (1921) (citing *Hurtado v. California*, 110 U.S. 516, 535 (1884)). Plaintiff Klayman, acting *pro se* and having addressed the issues raised by Defendants in this instant motion, contends that Defendants' Motion is baseless, frivolous, filed in bad faith and for an improper purpose, with an intent to delay justice, harass, hold up to false light and defame again Plaintiff Klayman, underscoring why in the last seventeen years since Plaintiff Klayman voluntarily left Judicial Watch to run for the U.S. Senate in Florida he has regrettably been forced to bring suit. Plaintiff Klayman has acted in good faith, with a legitimate motive for filing cases against Defendants, and treated his duty to the courts with integrity. Plaintiff Klayman respectfully requests that this Court deny Defendants' Motion and award sanctions in the form of attorneys' fees and costs to him.

DATED: January 29, 2020

Respectfully submitted,

/s/ Larry Klayman

Larry Klayman, Esq.
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Ave NW Suite 800
Washington, DC, 20006
Email: leklayman@gmail.com
Tel: 561-558-5336

*Plaintiff Pro Se*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of January 2020, a copy of the foregoing was filed and served by electronic filing upon counsel listed on the Notice of Electronic Filing.

*/s/ Larry Klayman*
Larry Klayman