**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN,

      Plaintiff,

v.

THOMAS FITTON, *et al*.

      Defendants.

Case No. 1:19-cv-02793-TSC

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT**
**OF MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT**

Defendants Thomas J. Fitton ("Fitton"), James F. Peterson ("Peterson"), Paul J. Orfanedes ("Orfanedes") and Christopher J. Farrell ("Farrell"), by counsel, hereby Supplement their Motion to Declare Plaintiff a Vexatious Litigant by providing evidence of additional litigation filed by Plaintiff Larry Klayman (Klayman"), which demonstrates the need to designate him as a vexatious litigant.

On February 6, 2020, Klayman filed an action against Defendant Fitton in the Eastern District of Virginia styled as *Klayman v. Fitton*, Case No. 1:20-cv-00135-LMB-IDD (E.D. Va.) (the "Virginia Action"), alleging tortious interference and defamation. <u>Exhibit A</u>. The new lawsuit, Klayman's 20th action against these Defendants, is based on the same alleged statement by Roger Stone, and once again, is not supported by any factual allegations. The Complaint contained no factual allegations to support personal jurisdiction or venue. The This new case is simply another harassing lawsuit that demonstrates Klayman must obtain prefiling approval before moving forward with any lawsuit against these Defendants.

On March 2, 2020, Defendant Fitton moved to dismiss the Virginia Action for lack of personal jurisdiction, improper venue and failure to state a claim. On April 28, 2020, the Motion

to Dismiss was granted finding no personal jurisdiction and judgment was entered in favor of

Defendant Fitton. <u>Exhibit B</u>. The Order notes:

> Although dismissal of a *pro se* litigant's complaint is often without prejudice and with leave to amend, this plaintiff is an attorney with a litigious track record against this defendant and this action is plainly duplicative of the action plaintiff recently filed in the United States District Court for the District of Columbia. "Plaintiffs have no right to maintain two separate actions involving the same subject matter at the same time against the same defendants," and "[t]he cases are legion that a party may not institute new actions duplicating existing litigation." *Nicholson v. Clarke*, 2013 WL 12099299, at* 1 (E.D. Va. Nov. 20, 2013). Accordingly, dismissal with prejudice is appropriate.

<u>Exhibit B</u> at p. 6. Pursuant to the Court's Order, judgment in favor of Defendant Fitton was entered

on April 28, 2020. <u>Exhibit C</u>.

Dated: May 4, 2020                          Respectfully submitted,

                                            /s/
                                            _____
                                            Richard W. Driscoll (436471)
                                            DRISCOLL & SELTZER, PLLC
                                            300 N. Washington St., Suite 610
                                            Alexandria, Virginia 22314
                                            703.822.5001 Telephone
                                            703.997.4892 Facsimile
                                            Email: rdriscoll@driscollseltzer.com

                                            *Counsel for Defendants Judicial Watch, Inc. and Thomas J. Fitton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of May 2020, a copy of the foregoing Supplemental Memorandum was served by the Court's ECF system upon all counsel of record and *pro se* parties listed on the Notice of Electronic Filing.

                                            /s/
                                            _____
                                            Richard W. Driscoll

# EXHIBIT A

FILED
AH

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

2020 FEB -6 P 3: 59

CLERK'S DISTRICT COURT
ALEXANDRIA, VIRGINIA

LARRY KLAYMAN,
7050 W. Palmetto Park Road #15-287
Boca Raton, FL, 33433

        Plaintiff

    v.

**Case Number:** 1:20 cv 135

THOMAS J. FITTON
5245 42nd St NW
Washington, DC 20015

        Defendant.

## COMPLAINT

    Plaintiff, LARRY KLAYMAN ("Plaintiff" or "Klayman") hereby files this action against THOMAS J. FITTON ("Defendant Fitton") for Tortious Interference, Defamation, and Defamation Per Se.

## JURISDICTION AND VENUE

    1.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 under diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds $75,000.

    2.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## THE PARTIES

    3.    Plaintiff, Larry Klayman, is an individual and a citizen of Florida. Plaintiff is a well-known private lawyer and conservative public interest advocate and litigator, as well as a syndicated national radio talk show host on Radio America, his weekly show appropriately titled

"Special Prosecutor with Larry Klayman." Plaintiff Klayman conceived of and founded both Judicial Watch, Inc. and Freedom Watch, Inc. He is a former federal prosecutor of the Antitrust Division of the U.S. Department of Justice, where he was on the trial team that broke up the AT&T monopoly. In 2003-2004 Plaintiff Klayman ran for the U.S. Senate in Florida.

4.      Defendant, Thomas Fitton, is an individual and a citizen of the District of Columbia. Defendant Fitton is the current President of Judicial Watch, which was conceived of and founded by Plaintiff Klayman.  He is not a lawyer and at the time that Klayman left Judicial Watch on September 19, 2003 to run for the U.S. Senate in Florida, Defendant Fitton had not graduated from college. When Plaintiff Klayman hired him years earlier as an assistant, he lied to Klayman that he had graduated from George Washington University. Since then Defendant Fitton has had a book written for him by "ghost writer," Ben Shapiro, effectively claiming credit for Plaintiff Klayman's accomplishments in conceiving of, founding and running Judicial Watch for almost ten (10) years. Plaintiff Klayman was thus conspicuously and maliciously written out of the history of Judicial Watch. The book is titled "Corruption Chronicles" and remains on sale on the internet and in book stores. Defendant Fitton has also falsely testified multiple times under oath that he does not know who founded Judicial Watch, as he continues to try to spread the false narrative and impression he or someone other than Klayman founded Judicial Watch, in order to boost his own standing in the conservative community and elsewhere, as the expense of Plaintiff Klayman. In short, and regrettably Defendant Fitton, as set forth below, is a 'serial liar" and dishonest.

## STANDING

5.      Plaintiff has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendant Fitton, individually and working in concert with Roger Stone as set

forth below.

## FACTS

6.      Defendant Fitton has, during the time occurring after Plaintiff Klayman left Judicial Watch, Inc. on September 19, 2003, to run for the U.S. Senate in Florida, engaged in a course of conduct which defamed, tortuously interfered with and thus severely damaged Plaintiff Klayman's personal and professional reputation and good will. In the words of convicted felon Roger Stone, Fitton has publicized to third parties that ""He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He left because of a sexual harassment complaint." Defendant Fitton has engaged in a course of conduct which continues to this day to harm Plaintiff Klayman's public interest and private legal advocacy, associations and other activities necessary to further Plaintiff Klayman's practice of law and his advocacy in general, by severely and maliciously damaging his reputation and goodwill.

7.      Specifically, Defendant Fitton, on or about February 19, 2019, published with actual and constitutional malice to Bob McEwan and others of the Council for National Policy ("CNP"), of which Plaintiff Klayman had been a member and sought to rejoin the organization and attend events as a guest. CNP is a non-profit corporation which holds quarterly meeting events in this district and throughout the United States and Canada to meet and also facilitates networking in general with conservative leaders who have supported the work of Plaintiff Klayman. Specifically Defendant Fitton published defamatory representations, many of which will also be disclosed in discovery,  that Plaintiff Klayman *inter alia* had been ousted from Judicial Watch, Inc., which he conceived of an founded on July 29, 1994, because of a sexual harassment complaint. Recently in a deposition taken in a related lawsuit for defamation, *Klayman v. Fitton*, 1:19-cv-20544 (S.D FL.), Defendant Fitton was forced to admit, under oath,

that this was not true, but he has published this over the last seventeen years to many third parties in any event to severely harm Plaintiff Klayman's reputation, good will, business prospects and livelihood and well-being of his family. Specifically, Defendant Fitton testified: "No, because that's not true. You weren't ousted as a result of a sexual harassment complaint." Exhibit 1.

8.      In addition to CNP, Defendant Fitton has published this and other false statements to other third parties in the conservative movement, including the American Conservative Union and its Conservative Political Action Conference ("CPAC") to exclude Plaintiff Klayman from participation by severely harming his reputation and good will in the conservative community. Defendant Fitton has also published these false statements to donors who would have supported Klayman and his later conceived of and founding organization Freedom Watch, Inc., such as the Sarah Scaife and Carthage Foundations. During Plaintiff Klayman's tenure as the head of Judicial Watch, Inc., the organization had received close to $2 million U.S. Dollars annually to support its public interest work in investigating and prosecuting government corruption and abuse.

9.      The malicious intent to harm Plaintiff Klayman is not only the result of personal animus and hatred of him by Defendant Fitton, but also a calculated scheme to compete unfairly and unscrupulously against him, as Fitton harbors an inferiority complex because he is not a lawyer, yet now heads Judicial Watch, Inc., which in effect is a public interest law firm. In fact, at the time that Plaintiff Klayman left Judicial Watch, Inc. in the fall of 2003 to run for the U.S. Senate in Florida, he had learned that Defendant Fitton had not even graduated from George Washington University, despite his having presented a false and fraudulent resume to Klayman years earlier to fraudulently induce Klayman, as the then Chairman and General Counsel of Judicial Watch, Inc., to hire Fitton as his assistant.

10.     As evidence of this course of conduct, and as set forth above the preceding paragraphs, on or about February 19, 2019, Defendant Fitton published with actual and constitutional malice that Klayman had been ousted from Judicial Watch, Inc., because of sexual harassment complaint. This caused CNP to exclude Klayman from an event where his client, Dr. Jerome Corsi, was to receive an award. Plaintiff Klayman had been invited to attend the CNP event and quarterly meeting by Dr. Corsi and his wife - who are members of CNP - which was held at the Ritz Carlton, in Tysons Corner, Virginia. Defendant Fitton's conduct thus severely harmed Klayman's reputation and good with the organization and the conservative community in general. Even more egregious is the fact that CNP is primarily comprised of social and religious conservatives and leaders who have supported Plaintiff Klayman in the past as the head of Judicial Watch, Inc., and now Freedom Watch, Inc., and as a candidate for the U.S. Senate in Florida

### FIRST CAUSE OF ACTION
### *Tortious Interference*

11.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

12.     Plaintiff Klayman has had a relationship and business expectancy with CNP.

13.     Defendant Fitton knew of this relationship or expectancy between Plaintiff and CNP.

14.     Defendant Fitton intentionally interfered, causing the breach and interference with and thus termination of the relationship or expectancy.

15.     Defendant Fitton and Plaintiff have a competitive relationship as chairmen of conservative public interest groups.

16.     As a result of this interference, Plaintiff Klayman has suffered damages stemming

from not being allowed to be a member of and even attending as an invited guest at CNP events, such as the event held, as set forth above, at the Ritz Carlton in Tysons Corner, Virginia.

## SECOND CAUSE OF ACTION
### *Defamation*

17.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs of the Complaint as if fully set forth herein.

18.     Defendant Fitton published the malicious, false and defamatory statement that Plaintiff Klayman was ousted at Judicial Watch due to a sexual harassment complaint to CNP and CPAC.

19.     This false and misleading statement was published with malice, as Defendant Fitton knew that it was false and misleading, or at a minimum acted with a reckless disregard for the truth.

20.     Plaintiff Klayman has been severely harmed and damaged by this and other false and misleading statements, more of which will be uncovered in discovery, because it subjected him to hatred, distrust, ridicule, contempt, and disgrace.

21.     Plaintiff Klayman has been severely damaged by this false and misleading statement because this malicious statement and others to be uncovered in discovery injured Plaintiff Klayman in his profession and business as a public interest and private lawyer and nationally syndicated radio talk show host who promotes ethics in government and the legal profession, as well as personally. This damage was severe and is continuing as to Plaintiff Klayman's reputation and good will as set forth above.

## THIRD CAUSE OF ACTION
### *Defamation Per Se*

22.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding

6

paragraphs of the Complaint.

23.     Defendant Fitton published the malicious false, misleading and defamatory statement that Plaintiff Klayman was ousted at Judicial Watch due to a sexual harassment complaint.

24.     This false and misleading statement was published with malice, as Defendant Fitton knew that it was false and misleading, or at a minimum acted with a reckless disregard for the truth.

25.     This malicious false, misleading and defamatory statement was published in person and on the internet in this district, domestically and internationally for CNP and the conservative community in particular to see and hear and specifically Defendant Fitton published these malicious false and misleading "facts," *inter alia*, that Plaintiff's conduct, characteristics or a condition is incompatible with the proper exercise of his lawful business, trade, profession or office and that he is an immoral person.

26.     This malicious false and misleading statement is *per se* defamatory because it falsely accuses Plaintiff Klayman of being ousted from Judicial Watch because of sexual harassment - thereby falsely imputing a criminal and sexually related offense upon Plaintiff Klayman – as well as being "ousted" as the chairman and general counsel of Judicial Watch because of an actual sexual harassment complaint, as well as the other false and misleading published statements alleged herein.

27.     This false, misleading, and defamatory statement concerning Plaintiff Klayman is defamatory *per se* and this false and misleading statement, and others which will be uncovered in discovery, severely harmed and damaged Plaintiff Klayman in his profession and business as a lawyer and advocate and as a nationally syndicated radio talk show host, as they concern conduct

and characteristics incompatible with being a lawyer and radio talk show host who promotes ethics in government and the legal profession. This damage is severe and continuing to Plaintiff Klayman's reputation and good will. Damage is presumed by law when defamation *per se* is shown.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Larry Klayman prays for judgment against Defendant Fitton as follows:

a.      Awarding Plaintiff Klayman compensatory including actual, consequential, incidental and punitive damages for malicious tortious conduct as alleged herein in an amount to be determined at trial and in excess of $35, 000,000 U.S. Dollars.

b.      Awarding Plaintiff Klayman attorney's fees and costs.

c.      Granting any such further relief as the Court deems appropriate including preliminary and permanent injunctive relief

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

Dated: February 5, 2020                                            Respectfully Submitted,

Larry Klayman
7050 W Palmetto Park Road
Suite 15-287
Boca Raton, Florida 33433
Telephone:  (561) 558-5536
Email: leklayman@gmail.com
Plaintiff *Pro Se*

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LARRY KLAYMAN,            )
                                     )
        Plaintiff,         )
                                     )
     v.                    )     1:20-cv-135 (LMB/IDD)
                                     )
THOMAS J. FITTON,      )
                                   )
        Defendant.    )

ORDER

In this civil action, plaintiff <u>pro se</u> Larry Klayman ("plaintiff" or "Klayman") alleges

three Virginia state law claims against defendant Thomas Fitton ("defendant" or "Fitton"):

tortious interference with contractual relations (Count I), defamation (Count II), and defamation

<u>per se</u> (Count III). Each count arises out of defendant's alleged statement to individuals affiliated

with the Council for National Policy ("CNP") that plaintiff was forced out of his position at

Judicial Watch, Inc. ("Judicial Watch") due to sexual harassment allegations made against him.

Before the Court is defendant's Motion to Dismiss, which has been fully briefed and which,

pursuant to the Order issued on Court March 30, 2020, will be decided on the papers submitted.

For the following reasons, defendant's Motion to Dismiss will be granted.

In his complaint, plaintiff, a resident of Florida, alleges that he is "a well-known private

lawyer and conservative public interest advocate and litigator, as well as a syndicated national

radio talk show host," who "conceived of and founded" Judicial Watch in 1994, and that the

defendant, a resident of the District of Columbia, is "the current President of Judicial Watch" and

a "a serial liar." Complaint ¶¶ 3–4. He further alleges that he left his position at Judicial Watch in

2003 to run for the United States Senate in Florida and that on February 19, 2019, the defendant

made the false statement that plaintiff had been forced out of his position at Judicial Watch due to sexual harassment allegations made against him. Id. ¶¶ 3, 6. Specifically, the Complaint claims that the defendant told Bob McEwan, and other individuals affiliated with CNP, that the plaintiff "had been ousted from Judicial Watch . . . because of a sexual harassment complaint." Id. ¶ 7. As a result of this statement, CNP allegedly "exclude[d] [plaintiff] from an event . . . at the Ritz Carlton[] in Tysons Corner, Virginia" to which he "had been invited" by one of his clients, who "was to receive an award" at the event. Id. ¶ 10. The Complaint also appears to allege, without providing any detail, that the defendant made a similar false statement to "other third parties in the conservative movement," with the goal of "harming [plaintiff's] reputation and goodwill in the conservative community." Id. ¶ 8.

On March 3, 2020, defendant filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), arguing that this court lacks personal jurisdiction over him, that venue is not proper in this district, and that plaintiff has failed to state a tortious interference claim upon which relief can be granted. Because defendant's personal jurisdiction argument is meritorious, his venue and merits-based arguments need not be addressed. In addition, as defendant's Motion to Dismiss points out, this is at least the eleventh action the plaintiff has filed against this defendant since plaintiff left Judicial Watch in 2003. [See Dkt 4-1].[1] None of these actions appears to have been meritorious as against this defendant. In fact, this Complaint essentially duplicates a complaint plaintiff recently filed in the United

---

[1] Defendant has attached a list of these actions to his Motion to Dismiss. The Court can consider these actions because "[i]n deciding a motion to dismiss, a court may consider the facts alleged on the face of the complaint as well as matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Spirito v. Peninsula Airport Comm'n, 350 F. Supp. 3d 471, 480 (E.D. Va. 2018).

States District Court for the District of Columbia. See Klayman v. Fitton, et al. Case No. 19-cv-2793 (D.D.C. Aug. 28, 2019). In that action, in which a Motion to Dismiss and a Motion for an Order Declaring Plaintiff a Vexatious Litigant are currently pending, plaintiff has alleged that the defendant along with several other individuals, "published and republished the malicious, false and defamatory statement that [plaintiff] was ousted at Judicial Watch due to a sexual harassment complaint." Id.

Under Rule 12(b)(2), "the Court may dismiss a case for lack of personal jurisdiction." Selke v. Germanwings GmbH, 261 F. Supp. 3d 645, 561 (E.D. Va. 2017). "When a court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of a sufficient jurisdictional basis to survive the challenge." Id. "In such circumstances, a court must view all the relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction." Id. at 651–52.

In his Motion to Dismiss, defendant argues that the Court lacks personal jurisdiction over him because plaintiff "does not allege that [defendant] availed himself of Virginia, or that any relevant facts supporting his claim[s] took place in Virginia." Defendant's Brief in Support at 8. In response, plaintiff argues that defendant "published [the false statement] into Virginia" because Bob McEwan "lives in Fairfax County, Virginia," and that "[t]he injury [he] suffered . . . occurred in Virginia" when he was not allowed to attend "the CNP event in Tysons Corner, Virginia." Plaintiff's Brief in Opposition at 4. Defendant has the better argument.

"To satisfy the constitutional due process requirement [of personal jurisdiction], a defendant must have sufficient minimum contacts with the forum such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009). "The minimum contacts test requires

the plaintiff to show that the defendant purposefully directed his activities at the residents of the forum and that the plaintiff's cause of action arises out of those activities." Id. "This test is designed to ensure that the defendant is not hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," and "protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." Id.

The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction [into] a three part test."[2] Id. at 278. In that test, the court considers "(1) the extent to which the defendant purposefully availed [himself] of the privilege of conducting activities in the [s]tate; (2) whether the plaintiff's claims arise out of those activities directed at the [s]tate; and (3) whether the exercise of jurisdiction would be constitutionally reasonable." Id. "If, and only if . . . the plaintiff has satisfied th[e] first prong of the test for specific jurisdiction need [the court] move on to a consideration of prongs two and three." Id.

As relevant here, it is well-established that, under the first prong of the test, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." See, e.g., Foster Made, LLC v. Foster, 2018 WL 4693810, at *3 n.6 (E.D. Va. Sept. 28, 2018); McNeil v. Biaggi Productions, LLC, 2017 WL 2625069, at *7 (E.D. Va. June 16, 2017); Gillison v. Lead Express, Inc., 2017 WL 1197821, at *12 (E.D. Va. Mar. 30, 2017). In other words, "[a]lthough the place the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 143 (4th Cir. 2020). "[T]he

---

[2] "A court may exercise general or specific personal jurisdiction." Purdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016). Plaintiff does not argue that this court has general personal jurisdiction over the defendant.

4

purposeful availment prong of the personal jurisdiction analysis can be met if a defendant's

intentional conduct in the forum state was calculated to cause injury to the plaintiff in the forum

state," but "mere injury [in the forum state] is not a sufficient connection to the forum." See, e.g.,

Foster Made, 2018 WL 4693810, at *3 n.6; McNeil, 2017 WL 2625069, at *7; Gillison, 2017

WL 1197821, at *12.

Here, as in Gillison, plaintiff "alleges nothing more than injury in Virginia." Id. at *13.

Specifically he alleges that, as a result of the false statement defendant made about him to CNP,

CNP "exclude[d] [him] from an event . . . at the Ritz Carlton[] in Tysons Corner, Virginia" to

which he "had been invited" by one of his clients, who "was to receive an award" at the event.

Id. ¶ 10. That is the sole reference to Virginia in the Complaint and it is plainly inadequate to

confer this court with personal jurisdiction over the defendant.[3] In an attempt to avoid this self-

evident conclusion, plaintiff argues that Bob McEwan lives in Virginia, and that this fact saves

his Complaint because he has alleged that the defendant made the false statement about him to

McEwan. This argument is unpersuasive for two reasons. First, there is no allegation in the

Complaint that McEwan lives in Virginia; rather, it is only in plaintiff's opposition to

defendant's Motion to Dismiss, that he states he "has confirmed through research that [McEwan]

---

[3] Plaintiff summarily alleges, only in connection with his defamation per se claim, that
defendant's false statement about him "was published in person and on the internet in this
district, domestically, and internationally," Complaint ¶ 25. That allegation is an example of the
"naked assertions devoid of further factual enhancement" that "are not entitled to the
presumption of truth." Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir.
2017). Plaintiff also summarily alleges, only in connection with his tortious interference claim,
that he "had been a member" of CNP and "sought to rejoin" the organization but was not
"allowed to" do so, and that CNP "holds quarterly meetings in this district and throughout the
United States and Canada," Complaint ¶¶ 7, 16. That allegation relates only to plaintiff's injury,
and therefore is inadequate to confer this court with personal jurisdiction over defendant for the
same reasons his allegation regarding the CNP event in Tysons Corner, Virginia fails to establish
personal jurisdiction over the defendant.

lives in Fairfax, County Virginia," and provides an affidavit to that effect. Plaintiff's Brief in Opposition at 4. "It is well established that parties cannot amend their complaints through briefing or oral advocacy." vonRosenberg v. Lawrence, 849 F.3d 163, 167 n.1 (4th Cir. 2017). Second, even if McEwan's Virginia residence had been included in the Complaint, the allegation that McEwan lives in Virginia does not save plaintiff's Complaint from dismissal because neither it, nor plaintiff's opposition brief, contain any allegation that the defendant made the allegedly defamatory statement to McEwan in Virginia. "Purposeful availment cannot be satisfied by the unilateral activity of those who claim some relationship with a nonresident defendant;" "[i]nstead, a defendant must purposefully direct its actions towards a forum in order to be found to have purposefully availed [himself] of the benefits and protections of the forum's laws." UMG Recordings, Inc. v. Kurbanov, 362 F. Supp. 3d 333, 338 (E.D. Va. 2019). In other words, "[t]here must be knowing direction of harm towards the forum state to satisfy this prong." Id.; see also ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997). There simply is no such allegation here.

For these reasons, this Court lacks personal jurisdiction over this non-resident defendant. Accordingly, defendant's Motion to Dismiss [Dkt. 4] is GRANTED, and is it hereby

ORDERED that this civil action be and is DISMISSED.[4]

---

[4] Although dismissal of a pro se litigant's complaint is often without prejudice and with leave to amend, this plaintiff is an attorney with a litigious track record against this defendant and this action is plainly duplicative of the action plaintiff recently filed in the United States District Court for the District of Columbia. "Plaintiffs have no right to maintain two separate actions involving the same subject matter at the same time against the same defendants," and "[t]he cases are legion that a party may not institute new actions duplicating existing litigation." Nicholson v. Clarke, 2013 WL 12099299, at *1 (E.D. Va. Nov. 20, 2013). Accordingly, dismissal with prejudice is appropriate.

To appeal this decision, plaintiff must file a written notice of appeal with the Clerk of this court within thirty (30) days of the date of this Order. A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court of Appeals. Failure to file a timely notice of appeal waives the right to appeal this decision.

The Clerk is directed to enter judgment in defendant Thomas Fitton's favor under Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record and plaintiff pro se, and close this civil action.

Entered this 28th day of April, 2020.

Alexandria, Virginia

_____ /s/

Leonie M. Brinkema
United States District Judge

# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Larry Klayman, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.  1:20-cv-135-LMB-IDD |
| | ) |
| | ) |
| Thomas J. Fitton, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## **JUDGMENT**

Pursuant to the order of this Court entered on April 28, 2020 and in accordance with

Federal Rules of Civil Procedure 58, JUDGMENT is hereby entered in favor of the Defendant,

Thomas J. Fitton and against plaintiff, Larry Klayman.

FERNANDO GALINDO, CLERK OF COURT

By:_____/s/_____
　　　　　　　Anitra Chastine
　　　　　　　Deputy Clerk

Dated: April 28, 2020
Alexandria, Virginia