# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

               Plaintiff,

v.

THOMAS FITTON, et al

               Defendants.

**CASE NO: 1:19-cv-2793**

---

## PLAINTIFF'S MOTION TO VACATE ORDER AND MEMORANDUM OPINION OF SEPTEMBER 20, 2021 AND MOTION TO RECUSE AND FOR OTHER APPROPRIATE RELIEF BY THE JUDICIAL COUNSEL

Plaintiff Larry Klayman ("Mr. Klayman") moves to vacate the Order and Memorandum Opinion of September 20, 2021, for the district court judge to recuse herself, and for other relief by the Judicial Counsel for the following compelling grounds:

First, the Order and Memorandum Opinion dismissing this case without prejudice was both retaliatory and unethical, underscoring a total violation of Judge Tanya S. Chutkan's ("Judge Chutkan") oath of office. This oath requires federal judges to rule based on the law, not their enmity toward persons who appear before them. It clearly provides:

> I do solemnly swear that I will administer justice **without regard to persons**, and do equal right to the poor and to the rich, and that I will impartially discharge and perform all the duties incumbent upon me as judge under the Constitution and laws of the United States. So help me God. 28 U.S.C. § 453. (emphasis added).

Here, Judge Chutkan, who previously wrongly dismissed a case concerning Defendants Judicial Watch, Inc., Thomas Fitton, Paul Orfanedes, Christopher Farrell, and the Honorable Colleen Kollar-Kotelly ("Judge Kotelly"), in an effort ostensibly to protect her fellow leftist female jurist

on the bench, Judge Kotelly, after she had previously ordered that it be stayed pending appeal, *Klayman v. Judicial Watch, Inc. et al*, 1:19-cv-2604 (D.D.C.), now attacks Plaintiff personally with snide, disrespectful and in totally false gratuitous remarks evidencing an extreme rank, injudicious extra-judicial bias and prejudice. Wasting no time to disparage Mr. Klayman, Judge Chutkan opens her Memorandum Opinion by publishing "Plaintiff Larry Klayman proceeding pro se, has sued – **for the umpeenth time** – Thomas J. Fitton ...".  Judge Chutkan, who later in the Memorandum Opinion prides herself on taking judicial notice of other lawsuits, then lies and states **"since leaving Judicial Watch in 2003, he (Klayman), has frequently sued Judicial Watch and/or Defendants, each of whom works at Judicial Watch. He has not prevailed in any of those cases."** ECF No. 22 at 1.

To the contrary, a simple Google Search, much more Lexis or Westlaw searches, would easily reveal that Mr. Klayman previously obtained a jury verdict and judgment against Judicial Watch in *Klayman v. Judicial Watch Inc.*, 13-cv-20610 (S.D. FL.) when it, under the direction of Defendant Thomas Fitton herein, defamed him by having falsely published that he was a convicted felon, consistent with the pattern and practice of defamation as pled in this present case. Attached and incorporated by reference as <u>Exhibit 1</u> is this jury verdict and judgment, tried before an honest jurist, the Honorable Cecilia Altonaga ("Judge Altonaga"), of the U.S. District Court for the Southern District of Florida. Judge Altonaga had been not coincidentally mentioned as a potential Supreme Court nominee during the administration of President George W. Bush.

Importantly, this jury verdict and judgment hit Judicial Watch with not just compensatory damages but also punitive damages. This jury verdict was reported widely and had to be known by Judge Chutkan when she published her disrespectful and snide comments, as well as false statement that Mr. Klayman had never won a case against Judicial Watch. *See* David

Montgomery, *Larry Klayman wins one against Judicial Watch*, Washington Post, Jun. 10, 2014, available at: https://www.washingtonpost.com/news/post-nation/wp/2014/06/10/larry-klayman-wins-one-against-judicial-watch/. Exhibit 2.

Second, just days before Judge Chutkan issued her false, abusive and highly prejudicial Order and Memorandum Opinion, attacking and mocking Mr. Klayman, with false statements for obvious consumption and publication by the leftist media, to which she likely feels kinship, she and other judges in this Court had been sued by Plaintiff. *Klayman v. Rao et al*, 1:21-cv-2473. Attached as Exhibit 3 and incorporated by reference is this complaint without exhibits. *See* ECF No. 1-1, 1-2, 1-3 for Exhibits. Thus, Judge Chutkan was not only retaliating against Mr. Klayman over his constitutional right to file this complaint pro se by naming her as a defendant, which set forth prima facie violations of the Fifth, Fourteenth and First Amendments by Judge Chutkan and others, but she also had a conflict of interest in dismissing Mr. Klayman's complaint under these circumstances. Instead, she should have ethically recused herself from this case.

To add insult to considerable injury, she waited to dismiss this case after the one-year statute of limitations had run for defamation in the District of Columbia, as Mr. Klayman's complaint was filed on September 18, 2019, over two years ago. Clearly, this vindictive and harmful act was intentional. Pursuant to established black letter case law and the Federal Rules of Civil Procedure 15(a), which provide that leave to amend is to be freely granted, she refused to grant leave to file an amended complaint, which as set forth below was not necessary in any event, and instead "cleverly" dismissed the original complaint without prejudice, knowing that the one year statute in the District of Columbia would have already run.

As for Judge Chutkan's ethics violations, Canon 3(A)(3) of the Judicial Code of Conduct provides:

> A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity.

Furthermore, Canon 3(C) of the Judicial Code of Conduct provides:

> A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:
> (a) the judge has a personal bias or prejudice concerning a party....(i) a party to the proceeding....

> A judge should maintain and enforce high standards of conduct and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective. Canon 1

> A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Canon 2(A).

Third, contrary to the tortured and dishonest reasoning of Judge Chutkan contained in her Order and Memorandum Opinion, Mr. Klayman did plead defamation with great specificity and his allegation against Thomas Fitton for having told Roger Stone "He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He left because of a sexual harassment complaint" was much more than plausible. Twisting and thus perverting the holding of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which provides that a Plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face," Mr. Klayman's allegations that Fitton published this false and defamatory statement to Stone, who then republished it, was far beyond plausible. Paragraphs 20 – 24 of the complaint clearly set forth:

At 1:30, Stone published, "He (Klayman) was ousted at Judicial Watch. Ask Tom Fitton [the current president of Judicial Watch] why he left. He left because of a sexual harassment complaint."

Stone made this false, defamatory statement at the direction and as a result of the concerted actions of the Defendants, whom he attributes this false and defamatory statement to.

Defendants knew that Plaintiff Klayman was not ousted at Judicial Watch as a result of a sexual harassment complaint, but, in actuality, Plaintiff Klayman left Judicial Watch on his own accord and voluntarily in order to run for U.S. Senate in Florida.

Defendants, acting in concert in their individual capacities as joint tortfeasors with malice and/or a reckless disregard for the truth knew that Plaintiff Klayman did not leave Judicial Watch as a result of a sexual harassment complaint.

Defendants acting in concert individually as joint tortfeasors knowingly published this false and defamatory statement to Stone, who in turn published and republished it during interviews which were broadcast by him and his surrogates in this district, nationally and internationally for the entire world to hear and see. On information and belief Defendant Fitton had also recently published, within the last two years up to the present, this and other false and misleading statements to others to severely harm and damage Plaintiff Klayman, such as to the Council for National Policy, the American Conservative Union, the Scaife Foundation, other conservative organizations, groups and donors, and media publications and television networks such as Fox News, to name just a few. As a non-lawyer who currently runs Judicial Watch, Defendant Fitton feels competitive with Klayman, and as result of what in effect is an "inferiority complex" since he is a non-lawyer who tries to pass himself in the media off as a lawyer and legal expert as the current head of Judicial Watch, thus has engaged in, along with the other Defendants, a concerted campaign to severely damage and harm Klayman's reputation, professional and personal reputation, and family. By severely harming Plaintiff Klayman's reputation and standing in the legal, media and related communities, Defendants' malicious intent is to boost their own reputation and standing at the expense of Klayman, who conceived of, founded and successfully ran Judicial Watch for nearly ten (10) years, making it the preeminent conservative public interest group fighting against corruption and for ethics and justice in government and the legal profession.

As a result, Judge Chutkan had no right to take it upon herself to retaliate and vindictively dismiss this case, "cleverly" after the statute of limitations had run, and thus not allow the matter to proceed to discovery and likely a trial before a jury. That is not the province

of an honest jurist, but rather one who has a dishonest agenda. At a minimum, Judge Chutkan should have granted leave to amend instead of dismissing claims conveniently after the statute of limitation for defamation had run, without prejudice. FRCP Rule 15(a) provides that leave to amend shall be freely given when justice requires. "Leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The U.S. Supreme Court has declared that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Davis v. Liberty Mut. Ins. Co.*, 871 F.2d 1134, 1136 (D.C. Cir. 1989).

Our great Founding Father and Second American President Thomas Jefferson predicted such bad and despicable behavior by some federal judges as unelected and thus unaccountable to the people, with lifetime tenure, and he therefore opposed Article III of the Constitution, as Mr. Klayman has chronicled in his recent book "It Takes A Revolution: Forget the Scandal Industry!" published by Post Hill Press. (Hereafter "Revolution"). Jefferson warned the Framers of the Constitution as follows, while he was serving an Ambassador to France after the successful revolution against a British King and his monarch who had packed the Court of Saint James with his "yes men":

> You seem to consider the judges as the ultimate arbiters of all constitutional questions; a very dangerous doctrine indeed, and one which would place us under the despotism of an oligarchy. Our judges are as honest as other men, and not more so. They have, with others, the same passions for party, for power, and the privilege of their corps.... Their power is more dangerous as they are in office for life, and not responsible, as the other functionaries are, to elective control. The Constitution has erected no such single tribunal, knowing that to whatever hands confided, with the corruptions of time and party, its members would become despots... —Thomas Jefferson, Letter to William C. Jarvis, 1820. *Revolution* at p. 1.

Indeed, as a safeguard to the people's rights, juries in civil cases were inserted into the Constitution at Article III because the Founders did not trust unelected federal judges, appointed through political patronage with lifetime tenure, to be much different than what had been experienced under the King. To this end, another federal judge in this Court recently, unlike Judge Chutkan, following and adhering to law and proper procedure, allowed as a high-profile and controversial case to proceed, based on the allegations of the complaint, without himself taking it upon himself to opine what is plausible and not plausible, as this is not an honest federal judge's role when a complaint is properly pled at the motion to dismiss stage under FRCP 12 (b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Instead, Judge Carl Nichols properly recognized that this is for the jury to decide. In *U.S. Dominion, Inc., v. Powell et al*, 1:21-cv-00040 (D.D.C.) a lawsuit filed by U.S. Dominion, Inc. against Sidney Powell, Rudolph Giuliani, and My Pillow, Inc., and others, Judge Nichols thus ruled:

> In sum, Dominion has adequately alleged that Powell made a number of statements that are actionable because a reasonable juror could conclude that they were either statements of fact or statements of opinion that implied or relied upon facts that are provably false.

> Dominion has proffered much more. For the reasons discussed, Dominion has adequately alleged that Powell made her claims knowing that they were false, or at least with serious doubts as to their truthfulness.

> But again, Dominion has alleged more: in addition to alleging that Lindell's claims are inherently improbable, that his sources are unreliable, and that he has failed to acknowledge the validity of countervailing evidence, Dominion has alleged numerous instances in which Lindell told audiences to purchase MyPillow products after making his claims of election fraud and providing MyPillow promotional codes related to those theories. In totality, it has adequately alleged that Lindell made his claims knowing that they were false or with reckless disregard for the truth.

Finally, the bizarre and twisted reasoning of Judge Chutkan's Order and Memorandum Opinion, where she distorts a timeframe when Fitton and Judicial Watch filed a Freedom of Information Act and complaint in obvious furtherance of Roger Stone's interests, is so rife with

cooked analysis as to be an affront to common sense. This scenario was only offered to show the likelihood that Fitton was assisting Stone generally as part of pattern and practice to harm Mr. Klayman, which has been the case since Plaintiff left Judicial Watch on September 19, 2003, to run for the U.S. Senate in Florida.

All of this shows not only that Judge Chutkan violated her oath of office, lied and smeared Mr. Klayman in pleadings likely to be picked up and published by the leftist media, and had a prima facie conflict of interest having been sued by Mr. Klayman in advance of her Order and Memorandum Opinion, but that she also intentionally and vindictively wrongfully dismissed Plaintiff's complaint after the statute of limitations had run, extinguishing Mr. Klayman's rights and denying him yet again constitutional due process. *See* Exhibit 3.

To mitigate the damage that Judge Chutkan has done, and to try to rehabilitate any norm of judicial integrity, Plaintiff moves to vacate her Order and Memorandum Opinion, for her to immediately recuse herself from this case, to have the case put back into a random judicial selection system, and that she ethically herself refer this matter to the Judicial Counsel for consideration of appropriate discipline, to avoid Mr. Klayman having to do so. Of course, and sadly, this latter request is being made as a matter of principle, since it is well-known, based on past experience, that the Judicial Council will never hold one of its own accountable to the same ethical standards it holds legal practitioners accountable in the highly  politicized if not compromised federal courts in the  District of Columbia, where many judges act as if they are "above the law," and thus immune from liability much less any scrutiny, as Thomas Jefferson predicted.

Dated: October 6, 2021                                Respectfully submitted,

                                                           */s/ Larry Klayman*
                                                           Larry Klayman

7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Tel: (561)-558-5336
Email: leklayman@gmail.com

Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

I, Larry Klayman, hereby certify that on this day, October 6, 2021 a copy of the foregoing

was filed in person at the office of the clerk, and sent to counsel for Defendants via U.S. mail at:

**Richard Wayne Driscoll**
DRISCOLL & SELTZER, PLLC
2000 Duke Street
Suite 300
Alexandria, VA 22314

*/s/ Larry Klayman*_____
Larry Klayman

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.: 13-20610-CIV-ALTONAGA

**LARRY KLAYMAN,**

     Plaintiff,

v.

**JUDICIAL WATCH, INC.,**

     Defendant.

_____/

## **Verdict Form**

We, the jury, unanimously find as follows:

1.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman was defamed by Defendant Judicial Watch?

       Yes ✓  No _____

(If your answer is "yes," proceed to the next question. If the answer is "no," sign the verdict form.)

2.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman should be awarded compensatory damages against Defendant Judicial Watch?

       Yes ✓  No _____

If your answer is "Yes,"

     in what amount: $ 156,000.⁰⁰

(If your answer is "yes," skip question 3 and proceed to question 4. If your answer is "no," proceed to question 3.).

3.     Do you find from a preponderance of the evidence that Plaintiff Larry Klayman should be awarded nominal damages against Defendant Judicial Watch?

Yes _____     No ✓

If your answer is "Yes,"

in what amount: $ _N/A_ .

(Proceed to question 4.).

4.     Under the circumstances of this case, state whether you find by clear and convincing evidence that punitive damages are warranted against Defendant Judicial Watch:

Yes ✓     No _____

If your answer is "Yes,"

in what amount: $ 25,000.00 .

So say we all this 10 day of June, 2014.

_____
Foreperson

2

Case 1:19-cv-02782-TSC    Document 24    Filed 10/06/21    Page 13 of 38 Page 1 of 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 13-20610-CIV-ALTONAGA

**LARRY KLAYMAN,**

      Plaintiff,

v.

**JUDICIAL WATCH, INC.,**

      Defendant.

_____/

## FINAL JUDGMENT

**THIS CAUSE** came for trial before the Court and a jury, United States District Judge, Cecilia M. Altonaga, presiding, and the issues having been duly tried and the jury having duly rendered its verdict on June 10, 2014, it is

**ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff, Larry Klayman, and against Defendant, Judicial Watch Inc., in the amount of **$156,000.00** for compensatory damages and **$25,000.00** for punitive damages, totaling **$181,000.00**, for which sum let execution issue. Requests for costs and attorneys' fees shall not be submitted until after any post-trial motions are decided or an appeal is concluded, whichever occurs later. This judgment shall bear interest at the rate as prescribed by 28 U.S.C. section 1961, and shall be enforceable as prescribed by 28 U.S.C. sections 2001–2007, 28 U.S.C. sections 3001–3308, and Federal Rule of Civil Procedure 69(a). The Clerk shall mark this case closed.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of June, 2014.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

# EXHIBIT 2

# The Washington Post
*Democracy Dies in Darkness*

# Larry Klayman wins one against Judicial Watch

By David Montgomery

June 10, 2014

Last month we reported that legal crusader Larry Klayman's "record in public interest cases is incalculably terrible," so we feel bound to pass on that Tuesday Klayman scored a win against the group he founded, Judicial Watch. A federal jury in Florida awarded him $156,000 in compensatory damages and $25,000 in punative damages in a defamation case, according to Klayman.

There's been bad blood and more than one lawsuit between the two ever since Klayman left Judicial Watch in 2003. A separate set of claims and counterclaims is pending in federal court in Washington.

"I've had trials and tribulations with them for 10 years. I feel good," Klayman said. "It wasn't the dollars, it's the principle."

A spokeswoman for Judicial Watch said by email Friday evening that she was seeking comment from the watchdog group's officers.

The case centered on a false claim by a Judicial Watch employee in 2012 that Klayman had been convicted of not paying child support. Since Klayman is a public figure, he had to prove malice was behind the comment.

Klayman said a key piece of evidence at trial was a moment in a video deposition in which, according to Klayman's interpretation, the Judicial Watch employee, referring to Klayman, silently mouthed the word "a——."

"I played it for the jury three times," Klayman said.

**Discover more of the stories that matter to you.**     **Select your interests**

The facts are complicated. In 2012, the Judicial Watch employee attended an event in California featuring then U.S. Senate candidate and birther activist Orly Taitz. The employee allegedly told Taitz of Klayman's supposed conviction for not paying child support. Taitz posted the information on the Internet.

Turns out Klayman was indicted — not convicted — and he maintained that his temporary non-payment was a tactical legal maneuver to give him standing to appeal the child support. He later brought his payments up to date. (He has two teenage children and is divorced from their mother.)

Klayman said the comment hurt his reputation and caused him to be unable to raise money for his own lawsuit challenging the eligibility of President Obama to be on the ballot in Florida. Klayman is convinced that the birth certificate that Obama released is false.

Klayman is always juggling multiple cases, and the most important right now may be his challenge of the NSA's program of collecting records of domestic telephone calls. A federal judge in Washington ruled preliminarily in Klayman's favor in December, saying the program seemed to violate the Fourth Amendment protection against unreasonable search and seizure.

So many of Klayman's cases are long shots that he ultimately loses a lot of them, but he says victory lies in the secrets he unearths in the process. Yet this time, for now — will Judicial Watch appeal? — he has etched one in the win column.

"I'm going to Disney World," he quipped.



**Discover more of the stories that matter to you.**          **Select your interests**

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LARRY KLAYMAN
7050 W. Palmetto Park Rd
Boca Raton FL 33433

       Plaintiff,

v.

HON. NEOMI RAO
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. ROBERT L. WIKLINS
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. LAURENCE H. SILBERMAN
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. COLLEEN KOLLAR-KOTELLY
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. TANYA S. CHUTKAN
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. SRI SRINIVASAN
c/o 333 Constitution Ave NW
Washington DC 20001

   and

**COMPLAINT FOR INJUNCTIVE AND**
**OTHER EQUITABLE**
**RELIEF**

1

HON. KAREN LECRAFT HENDERSON
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. JUDITH W. ROGERS
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. DAVID S. TATEL
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. PATRICIA A. MILLETT
c/o 333 Constitution Ave NW
Washington DC 20001

   And

HON. CORNELIA T.L. PILLARD
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. GREGORY G. KATSAS
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. JUSTIN R. WALKER
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. KETANJI BROWN JACKSON
c/o 333 Constitution Ave NW
Washington DC 20001

and

HON. HARRY T. EDWARDS
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. DOUGLAS H. GINSBURG
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. DAVID B. SENTELLE
c/o 333 Constitution Ave NW
Washington DC 20001

   and

HON. A. RAYMOND RANDOLPH
c/o 333 Constitution Ave NW
Washington DC 20001

       Defendants.

## I.   INTRODUCTION

Plaintiff LARRY KLAYMAN ("Mr. Klayman") brings this action against HON. NEOMI RAO, HON. ROBERT L. WIKLINS, HON. LAURENCE H. SILBERMAN, HON. COLLEEN KOLLAR-KOTELLY, HON. TANYA S. CHUTKAN, HON. SRI SRINIVASAN, HON. KAREN LECRAFT HENDERSON, HON. JUDITH W. ROGERS, HON. DAVID S. TATEL, HON. PATRICIA A. MILLETT, HON. CORNELIA T.L. PILLARD, HON. GREGORY G. KATSAS, HON. JUSTIN R. WALKER, HON. KETANJI BROWN JACKSON, HON. HARRY T. EDWARDS, HON. DOUGLAS H. GINSBURG, HON. DAVID B. SENTELLE, and HON.

A. RAYMOND RANDOLPH for injunctive and other equitable relief for egregious and blatant violations of his constitutional and other legal rights.

## II.   JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2.      Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## III.   PARTIES

### Plaintiff

3.      LARRY KLAYMAN is an individual, natural person, who at all material times was and is a citizen of Florida.

### Defendants

4.      HON. NEOMI RAO ("Judge Rao") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit").

5.      HON. ROBERT L. WILKINS ("Judge Wilkins") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

6.      HON. LAURENCE SILBERMAN ("Judge Silberman") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

7.      HON. COLLEEN KOLLAR-KOTELLY ("Judge Kotelly") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. District Court for the District of Columbia.

8.     HON. TANYA S. CHUTKAN ("Judge Chutkan") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the U.S. District Court for the District of Columbia.

9.     HON. SRI SRINIVASAN ("Judge Srinivasan") is on information and belief an individual and a citizen of the District of Columbia. He is the Chief Judge of the D.C. Circuit).

10.    HON. KAREN LECRAFT HENDERSON ("Judge Henderson") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

11.    HON. JUDITH W. ROGERS ("Judge Rogers") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

12.    HON. DAVID S. TATEL ("Judge Tatel") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

13.    HON. PATRICIA A. MILLET ("Judge Millet") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

14.    HON. CORNELIA T.L. PILLARD ("Judge Pillard") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

15.    HON. GREGORY G. KATSAS ("Judge Katsas") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

16.    HON. JUSTIN R. WALKER ("Judge Walker") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

17.    HON. KETANJI BROWN JACKSON ("Judge Jackson") is on information and belief an individual and a citizen of the District of Columbia. She is a judge at the D.C. Circuit.

18.     HON. HARRY T. EDWARDS ("Judge Edwards") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

19.     HON. DOUGLAS H. GINSBURG ("Judge Ginsburg") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

20.     HON. DAVID B. SENTELLE ("Judge Sentelle") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit.

21.     HON. A. RAYMOND RANDOLPH ("Judge Randolph") is on information and belief an individual and a citizen of the District of Columbia. He is a judge at the D.C. Circuit

## IV.     STANDING

22.     Mr. Klayman has standing to bring this action because he has been directly affected, harmed, and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants, each and every one of them, jointly and severally.

## V.     FACTS

23.     This case centers around the unconstitutional and other illegal actions of Defendants, each and every one of them, acting in concert, in not just violating their oath of office as federal judges but worse violating Mr. Klayman's rights and discriminating against him in *Klayman v. Judicial Watch, Inc., et al*, 19-7105 (D.C. Cir.) (the "Appellate Proceeding"). This case was an appeal from a case before Judge Kotelly in this Court styled *Klayman v. Judicial Watch, Inc., et al*, 06-cv-670 (D.D.C.)(the "Lower Court Proceeding").

24.     During the Lower Court Proceeding, which lasted about sixteen (16) years, Judge Kotelly committed numerous highly prejudicial, intentional, and/or reckless manifest errors which resulted in a highly flawed and outrageous jury verdict against Mr. Klayman in the sum of

$2.8 million dollars. This was subsequently appealed to the D.C. Circuit. These highly prejudicial and manifest errors are set forth in detail in Appellant's Initial Brief and Appellant's Reply Brief which are incorporated herein by reference. <u>Exhibit 1</u>. These highly prejudicial manifest errors include, but are not limited to:

    a.  Allowing highly prejudicial, inflammatory statements and an irrelevant court order into evidence, in contradiction of both the Federal Rules of Evidence as well as the parol evidence rule.

    b.  Entering an overly broad, draconian sanctions order preventing Mr. Klayman from introducing evidence or calling witnesses at trial.

    c.  Usurping and extinguishing the fact-finding role of the jury, as provided for in the Seventh Amendment to the Constitution, by weighing competing affidavits to grant partial summary judgment to Judicial Watch with regard to Mr. Klayman's (1) Lanham Act claims, (2) rescission claim, and (3) defamation claims.

    d.  Usurping and extinguishing as provided for in the Constitution the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch.

    e.  Orally reading jury instructions that were erroneous, confusing, and highly prejudicial to Mr. Klayman, refusing to provide other jury instructions that would have stated the correct law and prevented the confusion, and then

failing to disclose any written instructions that were provided to the jury, if any.

f.  Failing to require authentication of documents submitted by Judicial Watch that purported to show "confusion" with regard to Judicial Watch's trademark infringement and related claims.

g.  Failing to provide a jury instruction that a few instances of alleged confusion, notwithstanding that there were no authenticated and admissible documentary evidence to show such confusion, do not constitute trademark infringement, in contravention of well-established case law.

h.  Failing to remit the damage award based on the actions of non-parties and the false representations to the jury by witnesses and counsel for Judicial Watch.

i.  Entering judgment on the jury verdict where Judicial Watch clearly failed to prove that Mr. Klayman took and used donor information owned solely by Judicial Watch, but rather was owned by American Target Advertising.

25.    These highly prejudicial manifest errors are fully set forth in detail in Appellant's Initial Brief and Appellant's Reply Brief, which are attached hereto as <u>Exhibit 1</u> and incorporated herein by reference.

26.    Among these highly prejudicial errors were clear cut violations of Mr. Klayman's sacrosanct due process rights, as guaranteed to him under the Fifth and Fourteenth Amendments. These highly prejudicial manifest errors deprived Mr. Klayman of meaningful and actual access to the courts to litigate his claims. These highly prejudicial errors enabled Judge Kotelly to determine the outcome of Mr. Klayman's case alone, taking it out of the hands of the jury, and causing Mr. Klayman's case to be decided not on the facts and the law, but on Judge Kotelly's

8

personal dislike for and extrajudicial bias and prejudice toward Mr. Klayman. These due process violations include, but are not limited to:

(a) Spending approximately one hour orally reading jury instructions to the jury, many of which instructions contained misstated law, and then refusing to provide documentation of any written instructions that were provided to the jury, if any. This is a due process violation on two fronts: (1) if no written jury instructions were provided to the jury, it is impossible to expect a jury of laypersons to remember and accurately apply over one hour's worth of oral instructions, which would have led to a clearly flawed jury verdict and (2) if written jury instructions were provided, Judge Kotelly's refusal to file or even provide a final copy to Mr. Klayman strongly suggests that she had something to hide in the form of inaccurate written jury instructions having been provided.

(b) Usurping and extinguishing the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch. This is a violation of Mr. Klayman's due process rights because it denied him his right to have a jury of his peers serve as the finder of fact on his claims.

(c) Entering an overly broad, draconian sanctions order preventing Mr. Klayman from introducing evidence or calling witnesses at trial, and subsequently refusing to give the jury an instruction informing them of this sanction,

leaving the jury with the false impression that Mr. Klayman simply had no evidence or witnesses to support his claims.

27.     At the D.C. Circuit, a three-judge panel consisting of Judge Rao, Judge Wilkins, and Judge Silberman further compounded the highly prejudicial manifest errors of the Lower Court in fully affirming the jury verdict from the Lower Court Proceeding. In doing so, the three judge panel not only mistakenly, intentionally, and/or recklessly failed to reverse clear errors by Judge Kotelly, but it also made new highly prejudicial errors of its own. It appears that the three-judge panel's opinion, penned by Judge Rao, was an attempt to protect a fellow female jurist in Judge Kotelly of which she and the others felt a kinship.

28.     It is apparent from the three-judge panel's opinion that was it intended to protect Judge Kotelly, and it is likely that they were colluding with her. An egregious example is that the three-judge panel, unprompted and gratuitously wrote that Judge Kotelly had done a "commendable" job in administering the case. This flies in the face of the cold, hard fact that this case took sixteen (16) years to try. This is not commendable in any way.

29.     Importantly, the three-judge panel clearly did not take the time in good faith  to actually conduct a bona fide review of the voluminous record, as it simply ignored Mr. Klayman's well documented arguments, and completely failed to address others that showed prima facie incontrovertible error by Judge Kotelly, such as her and their failure to account for the parol evidence rule, or her decision to grant partial summary judgment on the issue of alleged personal expenses owed to Judicial Watch, despite Mr. Klayman having provided a sworn affidavit countering each and every claimed expense, to name just a few by way of example.

30.     Mr. Klayman therefore had no choice but to seek Petition for Rehearing En Banc to try to set the record straight and correct the numerous highly prejudicial manifest errors that had occurred.

31.     Given the extremely voluminous record at the Lower Court level, which was unsurprising given the fact that it took sixteen (16) years to reach trial, and the fact that there were numerous highly prejudicial errors that needed to be remedied, Mr. Klayman moved for leave to file a 25-page Petition for Rehearing En Banc—a mere ten excess pages. This motion was filed on August 18, 2021.

32.     This was an eminently reasonable request, given again the voluminous record and the number of issues involved, and Mr. Klayman had a good faith basis to operate under the premise that such a basic and reasonable request would be granted. However, nine days elapsed from the filing of his motion, and only on August 27, 2021 at 12:23 p.m.—the day before Mr. Klayman's Petition was due to be filed—did the D.C. Circuit rule that no additional pages would be allowed. This malicious abuse of discretion was intended to "sandbag" Mr. Klayman, compromise his rights to be fully heard, and thus caught him off-guard and he had to scramble to prepare a 15-page Petition.

33.     Mr. Klayman subsequently timely filed two versions of his Petition for Rehearing En Banc—a fully compliant 15-page version, as well as a 25-page version accompanied by a Motion for En Banc Panel to Consider 25-Page Petition for Rehearing En Banc and Motion for Reconsideration by the Full Court. These encapsulate and set forth the numerous prejudicial and manifest errors made by the three-judge panel, and are attached hereto as Exhibit 2 and are incorporated herein by reference. The highly prejudicial and manifest errors by the three-judge panel include *inter alia*, but are hardly limited to:

11

a.  Failing to reverse the Lower Court's error of letting in highly inflammatory, and completely irrelevant testimony, and completely disregarding the fact that the Lower Court ignored the parol evidence rule.

b.  Failing to reverse the jury verdict with regard to Judicial Watch's trademark infringement claims, which were the result of unauthenticated inadmissible hearsay being admitted into evidence to prove likelihood of confusion, and the application of the incorrect standard necessary to show likelihood of confusion and any trademark or related infringement. In doing so, the three-judge panel admitted that there have been unreversed and precedential decisions by courts within the D.C. Circuit which have held that likelihood of confusion requires an "appreciable number of consumers," *Am. Ass'n for the Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C.1980), but then still applying a much lower standard in contravention of this case law.

c.  Failing to reverse the Lower Court's grant of summary judgment with regard to misuse of Mr. Klayman's likeness and being.

d.  Failing to set aside the jury verdict and judgment with regard to alleged access to Judicial Watch's donor list.

j.  Failing to reverse the Lower Court's usurping of and thus extinguishing the fact-finding role of the jury by weighing competing affidavits to grant partial summary judgment on Judicial Watch's counterclaim for repayment of personal expenses when Mr. Klayman submitted a sworn affidavit countering each and every claimed expense by Judicial Watch.

34.     These highly prejudicial and manifest errors are again set forth fully in Mr. Klayman's petitions for rehearing en banc, which are attached hereto as <u>Exhibit 2</u> and incorporated herein by reference.

35.     Among these highly prejudicial errors were clear cut violations of Mr. Klayman's sacrosanct due process rights, as guaranteed to him under the Fifth and Fourteenth Amendments. These highly prejudicial errors deprived Mr. Klayman of meaningful and actual access to the courts to litigate his claims and extinguished his constitutional and other legal rights. These highly prejudicial errors show that the three-judge panel did not actually consider the appellate record and apply the relevant law, and make their ruling based on the facts and the law, but instead based on their personal feelings towards Mr. Klayman and their desire to protect one of their own, Judge Kotelly, as well as to harm Mr. Klayman financially with a $2.8 million dollar flawed verdict. These due process violations include, but are not limited to:

(a) Failing to reverse the jury verdict with regard to Judicial Watch's trademark infringement and related claims, which were the result of unauthenticated inadmissible hearsay being admitted into evidence to prove likelihood of confusion, and the application of the incorrect standard necessary to show likelihood of confusion. In doing so, the three-judge panel admitted that there have been unreversed precedential decisions by courts in this Circuit and elsewhere   which have held that likelihood of confusion requires an "appreciable number of consumers," *Am. Ass'n for the Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244 (D.D.C.1980), but then still applying a much lower standard in contravention of this case law. This is a due process violation because it denies Mr. Klayman meaningful access to the appellate

courts, as he presented clear, unreversed case law in his favor, which the three-judge panel simply ignored.

36.     Then, finally, on September 15, 2021, Mr. Klayman's Petition for Rehearing En Banc was denied via a *per curiam* order by all of the Defendants, excluding Judge Edwards, Judge Ginsburg, Judge Sentelle, and Judge Randolph, along with his Motion to Consider 25-Page Petition for Rehearing En Banc. This *per curiam* order contained no legal reasoning or analysis, rendering it impossible for Mr. Klayman to know what issues to address when he takes this matter up to the Supreme Court on Petition for Writ of Mandamus and/or Certiorari. By including all of the members of the three judge panel, but excluding other judges on the D.C. Circuit,  in the review of Mr. Klayman's Petition for Rehearing En Banc, and  the resulting  per curiam order, this was intended to prejudice Mr. Klayman's right to an en banc review of the prejudicial manifest errors and opinion of the three judge panel.

37.     Pursuant to the Internal Operating Procedures of the D.C. Circuit, a vote sheet is transmitted to "all other active judges of this Court" which necessarily would have included Judge Edwards, Judge Ginsburg, Judge Sentelle, and Judge Randolph. These four Defendants are not part of the panel that denied Mr. Klayman's Petition, and therefore have abdicated their responsibility, contrary to their oath of office, to review the Petition for Rehearing En Banc and cast a vote, and thus they are also included in this complaint as defendants.

38.     The fact that it only took Defendants eleven (11) business days to deny Mr. Klayman's Petition for Rehearing En Banc, despite the extremely voluminous record, clearly shows that Defendants simply "rubber stamped" the three-judge panel and did not take any time to even read, review, digest, or consider Mr. Klayman's detailed and compelling arguments.

39.     Indeed, it would have been impossible for the Defendants to render a decision in just eleven (11) business days if they had actually reviewed the record and considered Mr. Klayman's arguments, even assuming that they had no other cases to work on (which is obviously not the case), simply given the extremely voluminous record.

40.     This is especially evident considering the fact that it took Defendants nine (9) days including weekends just to simply deny Mr. Klayman's motion for excess pages.

41.     Thus, from the timing alone, it is incontrovertible that Defendants in bad faith and in severe and blatant violation of constitutional and other legal rights gave Mr. Klayman's Petition for Rehearing zero (0) consideration. This is a clear violation of Mr. Klayman's due process rights because it denies him fair, meaningful, and non-discriminatory access to the appellate system, as it is clear that the en banc panel did not actually consider his arguments, and instead simply "rubber stamped" the three-judge panel's prejudicial and manifestly fatally flawed opinion.

42.     Furthermore, Mr. Klayman had filed an independent action in this Court relief under Fed. R. Civ. P. 60 and asking that the Lower Court judgment be set aside. *Klayman v. Judicial Watch, Inc.*, 1:19-cv-2604 (D.D.C.) based on fraud and other misconduct. This matter was assigned to Judge Chutkan.

43.     On September 22, 2019, Judge Chutkan stayed this matter pending resolution of the Appellate Proceeding. However, on February 16, 2021, Judge Chutkan reversed course and precipitously and inexplicably dismissed this action, well before the resolution of the Appellate Proceeding.

44.     Mr. Klayman respectfully asked Judge Chutkan via a motion if she had any "*ex parte*" communications with Judge Kotelly, which most likely explained her precipitous and

contradictory decision to dismiss the action without even giving Mr. Klayman an opportunity to submit any type of brief, much more allow a collateral appeal of the judgment to proceed pursuant to a conclusion as per her earlier stay order. Judge Chutkan has refused to give any substantive answer, giving rise to the strong inference that Judges Chutkan and Kotelly did, in fact, collude and act in concert to deny Mr. Klayman his constitutional and other legal rights.

45.     On information and belief, each and every one of the Defendants have communicated and worked together in collaboration to create and cause the manifest and grave injustice that has occurred. This has resulted from their personal animus towards and dislike for Mr. Klayman, as he has been very openly critical of federal judges in the Lower Court and its D.C. Circuit, particularly in the highly politized and toxic environment of the District of Columbia, as he wrote in his book "It Takes A Revolution: Forget the Scandal Industry!," which was dedicated to Thomas Jefferson. This greatest of Founding Fathers and presidents opposed Article III federal judges, as unelected, life tenured and thus unaccountable to We the People, predicting that they would in effect become despots and tyrants. This book was published on October 27, 2020, before the three-judge panel and en banc panel ruled, and it was widely advertised nationally and internationally months in advance of that by Post Hill Press and other publishers and distributors.

46.     The Defendants' dislike if not animus for Mr. Klayman is no secret. At a hearing in an unrelated matter where Mr. Klayman served as counsel, *Arpaio v. Zucker et al*, 18-cv-2894 (D.D.C.), the Honorable Royce Lamberth of the Lower Court and a judge in this D.C. Circuit revealed to Mr. Klayman and those who were in the audience, "I haven't had you here in a long time. It's a pleasure to have you again. I know some judges don't say that to you, but I will say it." Exhibit 3. This shows that even Judge Lamberth knew of the dislike if not animus that many

of his colleagues on the lower and higher courts in the D.C. Circuit had and continue to have for Mr. Klayman.

47.     However, respectfully, it is not Defendants' job to simply brush off and dismiss their duties as federal judges that for whatever reason they do not want to do, whether it be due to personal dislike of and animus toward the Appellant, Mr. Klayman, or for other reasons. Defendants were appointed to perform their duties of applying the law to the facts, regardless of any personal biases. This is required by the oath of office for federal judges:

> I do solemnly swear that I will administer justice **without regard to persons**, and do equal right to the poor and to the rich, and that I will impartially discharge and perform all the duties incumbent upon me as judge under the Constitution and laws of the United States. So help me God. 28 U.S.C. § 453 (emphasis added).

48.     Mr. Klayman has thus been severely harmed by the Defendants, as his due process rights pursuant to the Fourteenth Amendment of the Constitution and the Fifth Amendment to the Constitution have been severely violated, all with the intent to harm him by effectively attempting to bankrupt him and his family with a fatally flawed and manifestly wrong $2.8 million dollar verdict. On information and belief, Defendants believe that this will effectively put Mr. Klayman and his public interest advocacy, writings and other professional activities out of business, shielding them from more harsh criticism and potential litigation.

49.     Mr. Klayman therefore respectfully requests that this matter be transferred to another District Court where he is admitted, either the U.S. District Courts for the Southern or Middle Districts of Florida or the U.S. District Court for the Northern District of Texas, as this case will necessarily hinge upon members of this Court ruling on their own misconduct and violation of Plaintiff's constitutional and other legal rights, which creates a strong conflict of interest. Transfer to an impartial venue is therefore necessary in the interest of Mr. Klayman's due process and other rights, as well as the interests of justice in general.

**FIRST CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
**Fourteenth Amendment Due Process**

50.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

51.     Defendants' actions and omissions, each and every one of them acting in concert as joint tortfeasors, constituted a violation to Mr. Klayman constitutional rights secured by the Due Process clause of the Fourteenth Amendment.

52.     Defendants denied Mr. Klayman due process by failing to review the record, failing in good faith to even consider Mr. Klayman's arguments, and simply "rubber stamping" each other's' highly flawed and prejudicial orders.

53.     Defendants denied Mr. Klayman due process by taking away meaningful access to the legal system, taking away his ability to meaningfully seek appeal, and taking away his right to have his cases actually heard and considered by the judicial system.

54.     Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

55.     Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding, and it's affirmance by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

**SECOND CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
**Fifth Amendment Due Process**

56.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

57.     Defendants' actions and omissions constituted a violation to Mr. Klayman constitutional rights secured by the Due Process clause of the Fifth Amendment.

58.     Defendants denied Mr. Klayman due process by failing to review the record, failing to consider in good faith Mr. Klayman's arguments, and simply "rubber stamping" each other's highly flawed and prejudicial orders.

59.     Defendants denied Mr. Klayman due process by taking away meaningful access to the legal system, taking away his ability to meaningfully seek appeal, and taking away his right to have his cases actually heard and considered by the judicial system.

60.     Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

61.     Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding and affirmed by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

### THIRD CAUSE OF ACTION
*Civil Action for Deprivation of Rights*
*Against All Named Defendants*
*First Amendment Violation*

62.     Mr. Klayman repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

63.     Defendants' actions and omissions, each and every one of them acting in concert as joint tortfeasors, constituted a violation to Mr. Klayman constitutional rights secured by the First Amendment.

64.     Defendants believed that their misconduct and violation of Mr. Klayman's constitutional and other legal rights , as set forth above, will effectively put Mr. Klayman and his public interest advocacy, writings and other professional activities out of business, shielding them from more harsh criticism and potential litigation.

65.     Defendants' attempted to silence Mr. Klayman is a violation of his rights of free speech under the First Amendment.

66.     Defendants' actions were intentional, malicious, willful, wanton, and in gross and reckless disregard of Mr. Klayman's constitutional rights.

67.     Mr. Klayman prays that the $2.8 million dollar judgment rendered at the Lower Court Proceeding and affirmed by the D.C. Circuit be vacated and this matter be reheard and re-tried before an unbiased and neutral judge, as well as such other equitable relief as is deemed just and proper.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against each of the Defendants, jointly and severally, for declaratory and preliminarily and permanent injunctive relief, and any other further relief the Court deems just and proper, for the prejudicial, intentional, reckless, illegal, unconstitutional and malicious acts of the Defendants, each and every one of them, jointly and severally, against Mr. Klayman, which are and continue to be designed to severely harm him and his family, and subject him to potential bankruptcy, therefore eliminating him as a public interest advocate who has been and continues to be critical of many in the federal judiciary, particularly in and on the highly politicized, toxic, vindictive, and compromised D.C. Circuit.

Dated: September 21, 2021                     Respectfully submitted,

                                              _/s/ Larry Klayman_____
                                              Larry Klayman
                                              KLAYMAN LAW GROUP, P.A.
                                              7050 W. Palmetto Park Rd
                                              Boca Raton, FL, 33433
                                              Email: leklayman@gmail.com

                                              *Plaintiff Pro Se*