UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN,

    Plaintiff,

v.

THOMAS FITTON, *et al.*

    Defendants.

Case No. 1:19-cv-02793-TSC

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE
MOTION TO VACATE THE SEPTEMBER 20, 2021, ORDER,
MEMORANDUM OPINION AND OTHER REQUESTED RELIEF**

Defendants Thomas J. Fitton, James F. Peterson, Paul J. Orfanedes and Christopher J. Farrell, by counsel, hereby oppose the Motion to Vacate [ECF No. 24] this Court's September 20, 2021, Order and Memorandum Opinion (the "Dismissal Order"), request for recusal, and request for other relief (the "Motion") filed by Plaintiff Larry Klayman (Klayman"). Defendants further note that the reasons justifying denial of the Motion also demonstrate the need to designate Klayman as a vexatious litigant.

**INTRODUCTION**

Plaintiff's Motion fails to articulate any standard or basis justifying the Court to vacate the Dismissal Order. Klayman does not move for altering the judgment under Rule 59 or for reconsideration under Rule 60. Indeed, Plaintiff does not identify any mistake, newly discovered evidence, fraud, invalidity, or other reason to justify relief. Instead, he raises three baseless and unsupported arguments. Not one of the arguments raised challenges the Dismissal Order or the conclusion that the Complaint fails to state a claim under the minimal standards explained in *Bell Atlantic Co. v. Twombly*, 550 US 544, 555-56, (2007).

This Motion should be promptly denied. It fails to demonstrate any factual basis for the claims. The Dismissal Order clearly explained the reasons for dismissal, but Klayman ignored the deficiencies and merely reargued the same conclusory assertions and speculations. Likewise, Klayman's request for recusal does not meet the necessary threshold for such relief and appears to be more of an attempt at judge shopping. Finally, the Motion to Vacate provides further evidence supporting the earlier filed Motion to Declare Plaintiff a Vexatious Litigant.

I.        **PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF**

Instead of moving the Court to reconsider the Dismissal Order and grant leave to amend, Klayman argues that the conclusions and assumptions alleged in the original Complaint are already sufficient to support a plausible claim. This flawed argument fails to acknowledge the well-reasoned analysis contained in the Dismissal Order that concludes the Complaint did not allege sufficient facts to survive a motion to dismiss.

Plaintiff's Complaint "***must contain sufficient factual matter***, accepted as true, to 'state a claim . . . that is plausible on its face.'" *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added). "'***Threadbare recitals . . . , supported by mere conclusory statements, do not suffice***.'" *Id.* (emphasis added). The Complaint must be facially] plausible, and the facts alleged must allow the court to reach a reasonable inference that the defendant is liable.

The flaw of Klayman's position is the absolute dearth of any factual allegation within Paragraphs 20-24 of the Complaint, which he cites to as support for his position, to demonstrate any wrongdoing by any defendant. Merely alleging that the Defendants were "acting in concert" is a conclusion, unsupported by any fact alleged in the Complaint. It does not make the claim more plausible.

2

The Complaint itself is chronologically impossible. In Paragraph 9 of the Complaint, Klayman alleges, in part:

> Defendant Peterson also worked on and prepared the complaint with regard to the FBI raid on Stone's residence and it was at this this time that he had to be in contact with Stone and published or republished the false and defamatory statement alleged herein, which have also at all material times been published and republished by Defendants Fitton, Orfanedes and Farrell, acting in concert in their individual capacities as joint tortfeasors.

Complaint, ¶ 9. The allegation that Peterson "**had to be**" in contact with Stone regarding the FBI complaint and that publication occurred at this time contradicts the claim. For Stone to rely on the alleged statement, it would have to be published on or before January 18, 2019. *See* Complaint ¶ 19. The indictment and raid occurred on January 24 and 25, 2019, a week after the interview. *See* Complaint ¶ 16. The FOIA complaint that Klayman refers to was filed on March 21, 2019, more than two months later. Therefore, the statement by Stone was more than two months old when the FOIA complaint was filed, which demonstrates that the claim is factually impossible. *See Iqbal*, 556 U.S. at 679 ("determining whether a complaint states a plausible claim… [is] context-specific, … requir[ing] the reviewing court to draw on its judicial experience and common sense").

Because the Complaint lacks factual allegations to support publication of any defamatory statement by any Defendant, and because the allegations within the Complaint disprove the claim, the Dismissal Order is the only outcome consistent with the law.

## II.     **THE DISMISSAL ORDER IS BASED ON WELL ESTABLISHED LAW**.

In the Dismissal Order, Judge Chutkan sets out a clear standard governing her conclusions of law and cites to more than 10 cases supporting the applicable standard. Klayman cites to a newspaper article and avoids any discussion regarding how prevailing law is contradicted by the Dismissal Order (because he cannot). As such, the Motion does not demonstrate any failure by the Court to follow the applicable standard.

Klayman also makes no effort to explain how the use of the term "umpteenth" is harmful or disparaging to him. The word is defined by Merriam Webster as meaning: "latest or last in an indefinitely numerous series." *See* https://www.merriam-webster.com/dictionary/umpteenth. It is certainly accurate to state that this action is the latest in a numerous series of lawsuits Klayman has filed against the defendants since he was forced to resign in 2003. *See* Dismissal Order at p.1 n1 (listing lawsuits unsuccessfully filed by Plaintiff). These lawsuits resulted in several judgments against Klayman that now total more than $2,800,000. Moreover, Klayman never prevailed in any of these lawsuits against any of the current defendants.[1]

### III. PLAINTIFF FAILS TO DEMONSTRATE THAT RECUSAL IS NECESSARY

The Motion does not demonstrate that Judge Chutkan should have recused herself in this action. Citing to the Code of Conduct for United States Judges ("Code of Conduct"), Klayman erroneously contends that recusal was warranted because he sued Judge Chutkan a few days earlier alleging deprivations of certain constitutional rights.

The statute governing recusal of judges, 28 U.S.C. § 455(a), requires a federal judge to disqualify herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Canon 3(C) of the Code of Conduct also counsels that federal judges should disqualify themselves where their "impartiality might reasonably be questioned." *See* Code of Conduct for United States Judges, Canon 3(C)(1). Under both Section 455(a) and the Code of Conduct, the applicable test for determining whether an appearance of impropriety exists is an

---

[1] Klayman does cite to one case in which a judgment was entered against Judicial Watch based on the legal principal of *respondiat superior*. See ECF No. 153 in *Klayman v. Judicial Watch Inc.*, 13-cv-20610 (S.D. Fla. 2014). However, Klayman falsely characterizes this judgment as based on a finding that Defendant Fitton directed the publication of a defamatory statement that Klayman was a convicted felon. No such finding was made, and Defendant Fitton was not a party in that action. Further, the entire judgment was paid to Klayman's former spouse who holds a substantial judgment against Klayman.

objective one measured from the perspective of a disinterested reasonable person with knowledge of all the relevant facts and circumstances. *See In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991) (appearance-of-partiality test is objective inquiry that depends on whether "an informed observer would reasonably question the judge's impartiality").

Klayman cannot manufacture a conflict of interest merely to shop for a new judge, especially given Plaintiff's proclivity for filing lawsuits against judges who issue opinions against his interests. *See, e.g., Klayman v. Kollar-Kotelly, et al.*, Case No. 1:11-cv-01775-RJL (D. D.C.). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Opinions formed by the judge based on facts introduced or events occurring during the current proceedings do not constitute a basis for a bias or partiality motion "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Tripp v. Executive Office of the President*, 104 F. Supp. 2d 30, 34-35 (D.D.C. 2000). "Expressions of impatience, dissatisfaction, annoyance, and even anger" do not evidence the level of bias required by § 455(a). *Liteky*, 510 U.S. at 555-56. Klayman's reliance on the mere filing of a lawsuit, without more, lacks the support necessary to demonstrate objective impartiality. Every court opinion leaves at least one party dissatisfied. Here, the Court issued a well-reasoned opinion and there is no showing of partiality.

Klayman further argues that the timing of the Dismissal Order, coming after the expiration of the statute of limitations, is evidence of partiality. This argument is foolishness. Plaintiff was on record notice of the pending Motion to Dismiss and presumably knew when limitations would or did expire. If he believed that there was any chance the case would be dismissed, it was his responsibility to take necessary steps to preserve the right to pursue the claims. For example, Klayman could have formally moved the Court for leave to amend and included a draft amended

5

complaint. Instead, as is frequently the case, Klayman blames others for his own failure as an attorney.

IV.     **PLAINTIFF FAILED TO PROPERLY REQUEST LEAVE TO AMEND**

The offhand request for leave to amend in the conclusion paragraph of Plaintiff's opposition to the Motion to Dismiss does not comply with procedural requirements nor does it demonstrate that justice requires leave to amend. Rule 15(a)(2) provides that after the Defendants have responded to the Complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Courts are instructed to "freely give leave *when justice so requires*." Fed. R. Civ. P. 15(a)(2) (emphasis added). In this Court, Local Rule 7(i) requires a plaintiff to file a motion requesting leave that "shall be accompanied by an original of the proposed pleading as amended." LCvR 7(i). If a party complies with these requirements, leave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility. *Richardson v. United States*, 193 F.3d 545, 548-549.

Klayman did not meet the standard justifying leave to amend. A bald request for leave to amend fails to comply with Rule 15 or Local Rule 7(i). Plaintiff did not file a motion seeking leave to amend, provide the mandatory proposed amended complaint, provide information, such as factual allegations, to resolve the chronological inconsistency of his Complaint, or demonstrate a factual basis for the claim. Leave to amend is unwarranted without providing additional factual allegations necessary to support a defamation claim. Given Plaintiff's multiple failures, justice did not require leave to amend.

IV.     **PLAINTIFF IS A VEXATIOUS LITIGANT**

On January 15, 2020, these Defendants moved to have the Court declare Klayman a vexatious litigant. In the motion, Defendants cited to 18 separate cases to demonstrate that

Klayman meets the definition of a vexatious litigant due to a lengthy history of unsuccessfully prosecuting actions *pro se* and a habit of relitigating issues determined against him, ignoring court orders, and filing frivolous motions and pleadings.

Although the Dismissal Order ends the merits of this action, the Court has inherent power to adjudicate the Motion to Declare Klayman a Vexatious Litigant [ECF No. 9]. *See* 28 U.S.C. § 1651; *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985) ("it is now also well settled that a court may employ injunctive remedies to protect the integrity of the courts and the orderly and expeditious administration of justice").

This Motion's absence of merit or substance stands as further evidence of Klayman's frivolous and harassing tactics. Plaintiff continues to engage in a pattern of vexatious litigation against these Defendants that includes this Motion and a recently filed action against any Judge in this Circuit that is remotely related to any case involving these Defendants that has produced a negative outcome for Plaintiff. There is overwhelming evidence to warrant imposition of a pre-filing injunction that require leave of court prior to filing any further litigation.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Motion to Vacate be DENIED. In addition, Defendants respectfully request that the Court consider the absence of merit for this Motion in deciding the Motion to Declare Plaintiff a Vexatious Litigant.

Dated: October 20, 2021               Respectfully submitted,

/s/
_____
Richard W. Driscoll (436471)
DRISCOLL & SELTZER, PLLC
2000 Duke Street, Suite 300
Alexandria, Virginia 22314
703.822.5001 Telephone
703.997.4892 Facsimile
Email: rdriscoll@driscollseltzer.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 20th day of October 2021, a copy of the foregoing Opposition was served by the Court's ECF system upon all counsel of record and *pro se* parties listed on the Notice of Electronic Filing. In addition, a copy of the foregoing will be sent to the *pro se* party by email.

/s/
_____
Richard W. Driscoll